1 | **PAUL E. POTTER   SBN 93002**
POTTER, COHEN & SAMULON
2 | 3852 East Colorado Boulevard
Pasadena, California  91107
3 | (626) 795-0681

4 | **TERRENCE J. BENNETT, SBN 53149**
Post Office Box 709
5 | Pasadena, California  91102-0709
(626) 792-5868
6 |

7 |
**KENNETH A. REED, SBN 133567**
8 | 404 W. Fourth Street, Suite C
Santa Ana, California  92701
9 | (714) 953-7400

10 | Attorneys for Defendant
**JOHN WILLIAM STINSON**
11 |

2006 OCT -2  PM 3: 32

FILED

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CASE NO.:  CR 02-938 RGK** |
| Plaintiff, | **DEFENDANT STINSON'S RENEWED MOTION TO COMPEL FURTHER DISCOVERY OF MATERIAL IN THE ACTUAL AND CONSTRUCTIVE CUSTODY, CARE AND CONTROL OF THE PROSECUTION;** |
| v. | |
| **JOHN  STINSON,** | |
| Defendant. | **POINTS AND AUTHORITIES; EXHIBITS --** |
| | <u>**DEATH PENALTY CASE**</u> |
| | **DATE:  OCTOBER 4, 2006**
**TIME:    10:00 A.M.**
**COURTROOM 850** |

TO THE HONORABLE R. GARY KLAUSNER, UNITED SATES DISTRICT

JUDGE AND TO MARK CHILDS AND MARK AVEIS, ASSISTANT UNITED STATES

ATTORNEYS:

DOCKETED ON CM

OCT  4 2006

BY _____ 172

3907

1    PLEASE TAKE NOTICE that the defendant, JOHN STINSON by his attorneys

2    Terrence J. Bennett, Kenneth A. Reed and Paul E. Potter, brings the attached motion to

3    compel further discovery pursuant to the Fifth and Sixth Amendments to the United

4
5    States Constitution, Fed. R. Crim. P. 12, 16, and 26, and all other applicable statutes,

6    case law and local rules.

7        Mr. STINSON hereby moves this Court for an order to compel production of

8    unredacted discovery and unredacted materials produced by the California Department

9    of Corrections pursuant to defense subpoenas for *in camera* review.
10
11       This motion is based upon the instant motion, the previous discovery motion

12   wherein this request was denied without prejudice, the attached statement of facts and

13   memorandum of points and authorities, and any and all other materials that may come

14   to this Court's attention at the time of the hearing on these motions.

15   DATED: September 29, 2006              Respectfully submitted,

16                                          _P. Po lu_

17                                          _____
                                            Paul E. Potter
18                                          Attorney for Defendant
                                            **JOHN WILLIAM STINSON**

19   DATED: September 29, 2006              Respectfully submitted,

20                                          _P. Po lu  for TJB_

21                                          _____
                                            Terrence J. Bennett
22                                          Attorney for Defendant
                                            **JOHN WILLIAM STINSON**

23

24   DATED: September 29, 2006              Respectfully submitted,

25                                          _P. Po lu  for KAR_

26                                          _____
                                            Kenneth A. Reed
27                                          Attorney for Defendant
                                            **JOHN WILLIAM STINSON**

28

DEFENDANT'S MOTION TO COMPEL FURTHER DISCOVERY

## DISCOVERY COMPLIANCE AND NON-COMPLIANCE TO DATE

Great expanses of the Discovery remain redacted, the names of potential witnesses remain hidden and our trial date rapidly approaches. Many of the witness statements produced have *been produced in* such a way that the identity of the speaker is concealed and the context in which the statement was made is concealed. Other documents produced skip from page to page. Many of these over redacted documents have been produced in response to defense subpoena. The BATF continues to present plain paper, *sui generis*, reports which lump multiple interviews into a few consolidated paragraphs.

The government has taken possession of the documents the defense subpoenaed from the CDC-R. The government has redacted these documents, not only to exclude personal identifiers such as social security numbers and addresses, which we concede would be appropriate, *but* also to excise and exclude everything that does not fit he government's own narrow definition of <u>Brady</u> material

The result has been reams of worthless material, shortened only by those pages which instead of blacking out, the government has simply deleted.

Mr. STINSON renews his request, in light of the foregoing, for a complete unredacted set of the discovery materials heretofore delivered with redactions. Mr. STINSON requests a full set of BATF reports, on the proper forms, and in the proper format. Should the Government be unwilling to provide this, Mr. STINSON requests an Order requiring these materials to be lodged *under seal* with the Court, for a judicial ruling on just what, if anything, must remain hidden; said materials to remain *under seal* for potential appellate review.

Mr. STINSON renews his request for any promulgated guidelines or orders used to guide or regulate redactions by any redactor.

Mr. STINSON renews his request for The handwritten autobiography, of any live Government witness or hearsay declarant, "AB" or not, which all California debriefers must prepare at the outset of the debriefing process.

## POINTS AND AUTHORITIES
## IN SUPPORT OF RENEWED DEMAND

The excessive redactions, as illustrated in the small sample hereto appended, has rendered invisible all "negative exculpatory" statements and evidence - for instance, statements of informed parties regarding conduct related to the charges specific to Mr. STINSON wherein Mr. STINSON is not mentioned.  *Jones v. Jago*, 575 F.2d 1164, 1168 (6th Cir. 1978).

The excessive redactions and truncated reports conceal context with which to show bias of the witness, motive for the witness to lie or exaggerate testimony, and any credibility concerns of a government witness (i.e. prior bad acts of dishonest , felony convictions). *See generally, United States v. Abel*, 469 U.S. 45 (1984).  Impeachment evidence of  government witnesses is also discoverable under *Brady*.  *See United States v. Bernal-Obeso*, 989 F.2d 331, 336 (9th Cir. 1993) ("a material lie by a critical informant-witness about his prior record would be exculpatory and thus discoverable *Brady* material") If informant statements are limited to only the sentences spoken about a particular defendant, then there is no ability to cross-examine on the context in which the statement was made.

In *United States v. Alvarez*, 86 F.3d 901, 907 [1996] The 9th Circuit found, **"[T]he government did not have a right unilaterally to redact the reports,"** the Court

emphasized. (Id., at 906; emphasis in original.) If the government believed that there were portions of a statement memorialized in a report that were irrelevant and not disclosable, said the Court, "the entire statement must be delivered to the court in camera for the court to decide whether a portion of the statement should be redacted." (Id., at 907; emphasis in original.) And, the Court added, as noted above, the redaction procedure should not "creat[e] the misimpression that information was not being withheld. ...[I]t should [be done] in a way that the defense knew there had been redactions and could, if it wished, challenge the redactions and preserve the record for appeal." (Ibid.)

Despite the injunction in Alvarez, this is exactly what has been done with witness statements in this case. Both those produced by the government and those subpoenaed by the defense! In Alvarez, supra, at 906: the improper redaction technique was discovered because the same counsel was provided the very same report -- but in unredacted form -- defending another defendant in another matter. Here, the government has supplied different versions of the same document in this same case.

Attempts at informal resolution have failed. The government takes the position that unless the defense can cite to a particular page and offer a persuasive theory of relevancy and legal entitlement, the redactions and excisions will remain.

Given the government's insistence on this point there remains, unfortunately, only one option: since, as the Ninth Circuit reaffirmed in Alvarez, **"the government [does] not have a right unilaterally to redact the reports"** (ibid.; emphasis in original), defendant Stinson requests that the Court "order the United States to deliver such statement[s] [-- all such statements, of every inmate informant interviewed, including the "rough notes"[1] of Agent

---

[1]        "Rough notes" may be statements within the Jencks Act, as where they are read back to the interviewee for confirmation of accuracy. (United States v. Ogbuehi, 18 F.3d 807, 810-811 [9th Cir. 1994].)

DEFENDANT'S MOTION TO COMPEL FURTHER DISCOVERY

Halualani and/or whomever was taking such notes during each interview --] for the inspection
of the court in camera" so that the Court can determine whether there is any Jencks and/or
Brady material contained therein which should be disclosed and so that the defense can
"challenge the redactions and preserve the record for appeal." (Id, at 907; emphasis added.)

## REQUEST FOR A HEARING ON THIS MOTION
## REQUEST THAT MR. STINSON BE PRESENT FOR THAT HEARING

The Supreme Court has held that a capitally-charged defendant lacks the
capacity to waive his right to be present. *See, e.g., Diaz v. United States*, 223 U.S. 442,
455, 32 S. Ct. 250, 56 L. Ed. 500 (1912) ("[Our courts] have regarded an accused who
is in custody and one who is charged with a capital offense as incapable of waiving the
right [to be present.]").   If a defendant lacks the ability to waive his presence, logic
dictates that such a waiver cannot be forced upon him.  *See, e.g., Hall v. Wainwright*,
733 F.2d 766, 775 (11th Cir. 1984) (defendant may never waive right to be present in
capital case), *cert. denied*, 471 U.S. 1107, 105 S. Ct. 2344, 85 L. Ed. 2d 858 (1985)
(*relying on Proffitt v. Wainwright*, 685 F.2d 1227, 1256-58 (11th Cir.1982), *modified on
reh'g*, 706 F.2d 311 (11th Cir.1983), *cert. denied*, 464 U.S. 1002, 104 S. Ct. 508, 78 L.
Ed. 2d 697).


## GUIDE TO EXHIBITS

The defense believes that the following exhibits, although a mere sample of the
materials produced, clearly demonstrate that the manner in which the prosecutors have

---

Moreover, the notes need to be examined by the Court, in any event, in order for it to determine whether they
contain *Brady* material. (*United States v. Alvarez, supra*, 86 F.3d at 904, fn. 2.)

---

redacted the discovery and defense subpoenaed materials requires an order for the production of unredacted materials or <u>Alvarez</u> review.

**EXHIBIT 1** One of the best examples of the government's actions is the debriefing interview of Vance Gloyne, which was previously provided to the defense with absolutely no redactions at Bates 76556 through 76574. It has 19 pages. The same document was recently disclosed. 10 pages were excised and the remaining 9 pages are heavily redacted. See Bates 120170 through 120178. The ten missing pages comprise more than half of the unredacted 19-page debrief that was provided by the previous prosecutors on the case to the defense over a year ago. In addition, the few remaining pages of the Gloyne debriefing that were recently provided to the defense consist of pages that contain large blocks of text that are completely redacted leaving little to no indication as to the debriefer's identity. If it were not for the earlier production of the complete unredacted debriefing, the defense would have little to no idea of the debriefer's identity, much less any other pertinent information necessary to help formulate its defense. Unfortunately we do not readily find other similarly excised and redacted documents in their original format for comparison.

**EXHIBIT 2** This appears to be the Norris debriefing, which the government produced as Bates 120116 through 120147. The defense was able to determine that the debriefer was Wendell Norris was because the prosecution disclosed the debriefer's moniker, "Blue". However, even with this revelation, the overly redacted debriefing interview is nothing short of incomprehensible. This is an 80 page document (See the last page, which is numbered 80) The government has produced 31 heavily redacted paged and simply excised 49. It should be noted that Mr. Norris is dead!

DEFENDANT'S MOTION TO COMPEL FURTHER DISCOVERY

On page 77, also Bates stamped "120145", of the Norris debrief where every single line of the page is redacted with the exception of exactly one line towards the bottom of the page that could easily be overlooked.  Therefore, with the excessive amount of redactions made by the government as mentioned above, the defense is compelled to believe that the redacted material inevitably includes <u>Brady</u> material.

**EXHIBIT 3** The debriefing interview produced on Bates 118214 through 118217 begins on page 3 of a fifteen page-debriefing interview by Capt. J. Cox.  There is no date revealed within the document, no one who reviewed the document is disclosed. There is a disclosure of one short paragraph regarding the reason behind Aaron Marsh's killing. Mr. STINSON is mentioned in pasing at page 118215 with no context to asses the allegation. One of two VICAR counts in the Indictment in which our client, Mr. Stinson, is facing the death penalty is mentioned on page 118214. The lack of further mention of Mr. STINSON is this document would be exculpatory, but the remainedr of the document is hidden! With only 4 redacted pages of a fifteen-page document , it is impossible for the defense to determine the identity of the debriefer.

**EXHIBIT 4** Other examples where debriefing interviews are so heavily redacted or omit several pages include debriefings which start at Bates 120209 and 120210 both of which start and end on "page 2". At 120635 there is a debriefing with the identity of the speaker and the date concealed. It starts at page 3 and contains a list of AB "shotcallers", which does not include Mr. STINSON! Exculpatory, no?

## CONCLUSION

For the foregoing reasons, Mr. STINSON respectfully requests that this Court order the Government to produce the items sought herein as soon as is reasonably possible.

The nature of the redactions, of which these exhibits are mere examples, their cumulative effect, and the one clear example we have identified so far where previous prosecutors in this same case disclosed the same document that the current prosecutors have decided to redact, leads inexorably to the conclusion that the same criteria was applied to other documents. With all these facts in mind, we respectfully request the delivery of minimally redacted documents, produced in response to defense Rule 17 subpoenas, and the materials that the government has produced in discovery, with the excised pages restored directly to the defense.

DATED: September 29, 2006

Respectfully submitted,

Paul E. Potter
Attorney for Defendant
**JOHN WILLIAM STINSON**

DATED: September 29, 2006

Respectfully submitted,

Terrence J. Bennett
Attorney for Defendant
**JOHN WILLIAM STINSON**

DATED: September 29, 2006

Respectfully submitted,

Kenneth A. Reed
Attorney for Defendant
**JOHN WILLIAM STINSON**

DEFENDANT'S MOTION TO COMPEL FURTHER DISCOVERY

## PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA          )
                             ) ss
COUNTY OF LOS ANGELES        )

I, Paul Potter, am self-employed in the County of Los Angeles, State of California.  I am over the age of eighteen and not a party to this action.  My business address is 3852 East Colorado Boulevard, Pasadena, California  91107.

On June 1, 2005, I served the following document described as:

**DEFENDANT STINSON'S RENEWED MOTION TO COMPEL FURTHER DISCOVERY OF MATERIAL IN THE ACTUAL AND CONSTRUCTIVE CUSTODY, CARE AND CONTROL OF THE PROSECUTION; POINTS AND AUTHORITIES; EXHIBITS**

on all interested parties by placing a true and correct copy into the e-mail network pursuant to the stipulation of counsel, addressed as follows:

Mark Childs  Mark.Childs@usdoj.gov ; Mark Aveis – Mark.Aveis@usdoj.gov

Terrence M. Bennett benedictus@earthlink.net;

Kenneth Reed  kar_crimlaw@sbcglobal.net;

Michael M. Crain michaelmcrain@aol.com Attorney for Robert Griffin;

Joseph S. Walsh attyjoewalsh@aol.com  Attorney for Robert Griffin;

John G. Cotsirilos mccabeatty@aol.com  Attorney for David Chance;

Knut S. Johnson  knutsj@cortezjohnson.sdcoxmail.com Attorney for David Chance;

Stanley Perlo  sperloesq@aol.com Attorney for Richard Terflinger;

Matthew Lombard  mlombard@lombardlaw.net  Attorney for Richard Terflinger;

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on September 29, 2006, at Pasadena, California.

PAUL POTTER

1  **PAUL E. POTTER   SBN 93002**
POTTER, COHEN & SAMULON
2  3852 East Colorado Boulevard
Pasadena, California  91107
3  (626) 795-0681

4  **TERRENCE J. BENNETT, SBN 53149**
Post Office Box 709
5  Pasadena, California  91102-0709
(626) 792-5868
6

7
**KENNETH A. REED, SBN 133567**
8  404 W. Fourth Street, Suite C
Santa Ana, California  92701
9  (714) 953-7400

10  Attorneys for Defendant
**JOHN WILLIAM STINSON**
11

12

13                **UNITED STATES DISTRICT COURT**

14              **CENTRAL DISTRICT OF CALIFORNIA**

15

16  **UNITED STATES OF AMERICA,**          |  **CASE NO.:  CR 02-938 RGK**

17  Plaintiff,                             |  **DEFENDANT STINSON'S RENEWED MOTION TO COMPEL FURTHER**
                                           |  **DISCOVERY OF MATERIAL IN THE**
18  v.                                     |  **ACTUAL AND CONSTRUCTIVE**
                                           |  **CUSTODY, CARE AND CONTROL OF**
19  **JOHN  STINSON,**                     |  **THE PROSECUTION;**

20  Defendant.                             |
                                           |  **POINTS AND AUTHORITIES; EXHIBITS --**
21
                                           |  **DEATH PENALTY CASE**
22
23
                                           |  **DATE:  OCTOBER 4, 2006**
24                                         |  **TIME:   10:00 A.M.**
                                           |  **COURTROOM 850**
25
TO THE HONORABLE R. GARY KLAUSNER, UNITED SATES DISTRICT
26
JUDGE AND TO MARK CHILDS AND MARK AVEIS, ASSISTANT UNITED STATES
27
ATTORNEYS:
28

                                    1

1    PLEASE TAKE NOTICE that the defendant, JOHN STINSON by his attorneys

2    Terrence J. Bennett, Kenneth A. Reed and Paul E. Potter, brings the attached motion to

3    compel further discovery pursuant to the Fifth and Sixth Amendments to the United

4    States Constitution, Fed. R. Crim. P. 12, 16, and 26, and all other applicable statutes,

5    case law and local rules.

6

7    Mr. STINSON hereby moves this Court for an order to compel production of

8    unredacted discovery and unredacted materials produced by the California Department

9    of Corrections pursuant to defense subpoenas for *in camera* review.

10

11    This motion is based upon the instant motion, the previous discovery motion

12    wherein this request was denied without prejudice, the attached statement of facts and

13    memorandum of points and authorities, and any and all other materials that may come

14    to this Court's attention at the time of the hearing on these motions.

15    DATED: September 29, 2006              Respectfully submitted,

16                                            P. Polu

17                                            _____
                                              Paul E. Potter
18                                            Attorney for Defendant
                                              **JOHN WILLIAM STINSON**

19    DATED: September 29, 2006              Respectfully submitted,

20                                            P. Polu fn TJB

21                                            _____
                                              Terrence J. Bennett
22                                            Attorney for Defendant
                                              **JOHN WILLIAM STINSON**

23

24    DATED: September 29, 2006              Respectfully submitted,

25                                            P. Polu fn KAR

26                                            _____
                                              Kenneth A. Reed
27                                            Attorney for Defendant
                                              **JOHN WILLIAM STINSON**

28

## DISCOVERY COMPLIANCE AND NON-COMPLIANCE TO DATE

Great expanses of the Discovery remain redacted, the names of potential witnesses remain hidden and our trial date rapidly approaches. Many of the witness statements produced have n such a way that the identity of the speaker is concealed and the context in which the statement was made is concealed. Other documents produced skip from page to page. Many of these over redacted documents have been produced in response to defense subpoena. The BATF continues to present plain paper, *sui generis*, reports which lump multiple interviews into a few consolidated paragraphs.

The government has taken possession of the documents the defense subpoenaed from the CDC-R. The government has redacted these documents, not only to exclude personal identifiers such as social security numbers and addresses, which we concede would be appropriate, also to excise and exclude everything that does not fit he government's own narrow definition of <u>Brady</u> material

The result has been reams of worthless material, shortened only by those pages which instead of blacking out, the government has simply deleted.

Mr. STINSON renews his request, in light of the foregoing, for a complete unredacted set of the discovery materials heretofore delivered with redactions. Mr. STINSON requests a full set of BATF reports, on the proper forms, and in the proper format. Should the Government be unwilling to provide this, Mr. STINSON requests an Order requiring these materials to be lodged *under seal* with the Court, for a judicial ruling on just what, if anything, must remain hidden; said materials to remain *under seal* for potential appellate review.

Mr. STINSON renews his request for any promulgated guidelines or orders used to guide or regulate redactions by any redactor.

Mr. STINSON renews his request for The handwritten autobiography, of any live Government witness or hearsay declarant, "AB" or not, which all California debriefers must prepare at the outset of the debriefing process.

## POINTS AND AUTHORITIES
## IN SUPPORT OF RENEWED DEMAND

The excessive redactions, as illustrated in the small sample hereto appended, has rendered invisible all "negative exculpatory" statements and evidence - for instance, statements of informed parties regarding conduct related to the charges specific to Mr. STINSON wherein Mr. STINSON is not mentioned. *Jones v. Jago*, 575 F.2d 1164, 1168 (6th Cir. 1978).

The excessive redactions and truncated reports conceal context which to show bias of the witness, motive for the witness to lie or exaggerate testimony, and any credibility concerns of a government witness (i.e. prior bad acts of dishonest , felony convictions). *See generally, United States v. Abel*, 469 U.S. 45 (1984). Impeachment evidence of government witnesses is also discoverable under *Brady*. *See United States v. Bernal-Obeso*, 989 F.2d 331, 336 (9th Cir. 1993) ("a material lie by a critical informant-witness about his prior record would be exculpatory and thus discoverable *Brady* material") If informant statements are limited to only the sentences spoken about a particular defendant, then there is no ability to cross-examine on the context in which the statement was made.

In United States v. Alvarez, 86 F.3d 901, 907 [1996] The 9th Circuit found, **"[T]he government did not have a right unilaterally to redact the reports,"** the Court

emphasized. (Id., at 906; emphasis in original.) If the government believed that there were portions of a statement memorialized in a report that were irrelevant and not disclosable, said the Court, "the entire statement must be delivered to the court in camera for the court to decide whether a portion of the statement should be redacted." (Id., at 907; emphasis in original.) And, the Court added, as noted above, the redaction procedure should not "creat[e] the misimpression that information was not being withheld. ...[I]t should [be done] in a way that the defense knew there had been redactions and could, if it wished, challenge the redactions and preserve the record for appeal." (Ibid.)

Despite the injunction in <u>Alvarez</u>, this is exactly what has been done with witness statements in this case. Both those produced by the government and those subpoenaed by the defense! In <u>Alvarez</u>, supra, at 906: the improper redaction technique was discovered because the same counsel was provided the very same report -- but in unredacted form -- defending another defendant in another matter. Here, the government has supplied different versions of the same document in this same case.

Attempts at informal resolution have failed. The government takes the position that unless the defense can cite to a particular page and offer a persuasive theory of relevancy and legal entitlement, the redactions and excisions will remain.

Given the government's insistence on this point there remains, unfortunately, only one option: since, as the Ninth Circuit reaffirmed in <u>Alvarez</u>, **"the government [does] not have a right unilaterally to redact the reports"** (ibid.; emphasis in original), defendant Stinson requests that the Court "order the United States to deliver such statement[s] [-- <u>all</u> such statements, of every inmate informant interviewed, including the "rough notes"[1] of Agent

---

[1]       "Rough notes" may be statements within the Jencks Act, as where they are read back to the interviewee for confirmation of accuracy. (*United States v. Ogbuehi*, 18 F.3d 807, 810-811 [9th Cir. 1994].)

Halualani and/or whomever was taking such notes during each interview --] for the inspection
of the court in camera" so that the Court can determine whether there is any Jencks and/or
Brady material contained therein which should be disclosed and so that the defense can
"challenge the redactions and preserve the record for appeal." (Id, at 907; emphasis added.)

**REQUEST FOR A HEARING ON THIS MOTION
REQUEST THAT MR. STINSON BE PRESENT FOR THAT HEARING**

The Supreme Court has held that a capitally-charged defendant lacks the
capacity to waive his right to be present. *See, e.g., Diaz v. United States,* 223 U.S. 442,
455, 32 S. Ct. 250, 56 L. Ed. 500 (1912) ("[Our courts] have regarded an accused who
is in custody and one who is charged with a capital offense as incapable of waiving the
right [to be present.]").   If a defendant lacks the ability to waive his presence, logic
dictates that such a waiver cannot be forced upon him.  *See, e.g., Hall v. Wainwright,*
733 F.2d 766, 775 (11th Cir. 1984) (defendant may never waive right to be present in
capital case), *cert. denied,* 471 U.S. 1107, 105 S. Ct. 2344, 85 L. Ed. 2d 858 (1985)
(*relying on Proffitt v. Wainwright,* 685 F.2d 1227, 1256-58 (11th Cir.1982), *modified on
reh'g,* 706 F.2d 311 (11th Cir.1983), *cert. denied,* 464 U.S. 1002, 104 S. Ct. 508, 78 L.
Ed. 2d 697).

**GUIDE TO EXHIBITS**

The defense believes that the following exhibits, although a mere sample of the
materials produced, clearly demonstrate that the manner in which the prosecutors have

---

Moreover, the notes need to be examined by the Court, in any event, in order for it to determine whether they
contain *Brady* material. (*United States v. Alvarez, supra,* 86 F.3d at 904, fn. 2.)

6
DEFENDANT'S MOTION TO COMPEL FURTHER DISCOVERY

1   redacted the discovery and defense subpoenaed materials requires an order for the

2   production of unredacted materials or <u>Alvarez</u> review.

3       **EXHIBIT 1** One of the best of the government's actions is the debriefing

4   interview of Vance Gloyne, which was previously provided to the defense with

5   absolutely no redactions at Bates 76556 through 76574. It has 19 pages. The same

6

7   document was recently disclosed. 10 pages were excised and the remaining 9 pages

8   are heavily redacted. See Bates 120170 through 120178. The ten missing pages

9   comprise more than half of the unredacted 19-page debrief that was provided by the

10  previous prosecutors on the case to the defense over a year ago. In addition, the few

11  remaining pages of the Gloyne debriefing that were recently provided to the defense

12  consist of pages that contain large blocks of text that are completely redacted leaving

13

14  little to no indication as to the debriefer's identity. If it were not for the earlier production

15  of the complete unredacted debriefing, the defense would have little to no idea of the

16  debriefer's identity, much less any other pertinent information necessary to help

17  formulate its defense. Unfortunately we do not readily find other similarly excised and

18  redacted documents in their original format for comparison.

19

20      **EXHIBIT 2** This appears to be the Norris debriefing, which the government

21  produced as Bates 120116 through 120147. The defense was able to determine that

22  the debriefer was Wendell Norris was because the prosecution disclosed the debriefer's

23

24  moniker, "Blue". However, even with this revelation, the overly redacted debriefing

25  interview is nothing short of incomprehensible. This is an 80 page document (See the

26  last page, which is numbered 80) The government has produced 31 heavily redacted

27  paged and simply excised 49. It should be noted that Mr. Norris is dead!

28

---

DEFENDANT'S MOTION TO COMPEL FURTHER DISCOVERY

On page 77, also Bates stamped "120145", of the Norris debrief where every single line of the page is redacted with the exception of exactly one line towards the bottom of the page that could easily be overlooked. Therefore, with the excessive amount of redactions made by the government as mentioned above, the defense is compelled to believe that the redacted material inevitably includes <u>Brady</u> material.

**EXHIBIT 3** The debriefing interview produced on Bates 118214 through 118217 begins on page 3 of a fifteen page-debriefing interview by Capt. J. Cox. There is no date revealed within the document, no one who reviewed the document is disclosed. There is a disclosure of one short paragraph regarding the reason behind Aaron Marsh's killing. Mr. STINSON is mentioned in pasing at page 118215 with no context to asses the allegation. One of two VICAR counts in the Indictment in which our client, Mr. Stinson, is facing the death penalty is mentioned on page 118214. The lack of further mention of Mr. STINSON is this document would be exculpatory, but the remainedr of the document is hidden! With only 4 redacted pages of a fifteen-page document , it is impossible for the defense to determine the identity of the debriefer.

**EXHIBIT 4** Other examples where debriefing interviews are so heavily redacted or omit several pages include debriefings which start at Bates 120209 and 120210 both of which start and end on "page 2". At 120635 there is a debriefing with the identity of the speaker and the date concealed. It starts at page 3 and contains a list of AB "shotcallers", which does not include Mr. STINSON! Exculpatory, no?

## CONCLUSION

For the foregoing reasons, Mr. STINSON respectfully requests that this Court order the Government to produce the items sought herein as soon as is reasonably possible.

The nature of the redactions, of which these exhibits are mere examples, their cumulative effect, and the one clear example we have identified so far where previous prosecutors in this same case disclosed the same document that the current prosecutors have decided to redact, leads inexorably to the conclusion that the same criteria was applied to other documents. With all these facts in mind, we respectfully request the delivery of minimally redacted documents, produced in response to defense Rule 17 subpoenas, and the materials that the government has produced in discovery, with the excised pages restored directly to the defense.

DATED: September 29, 2006

Respectfully submitted,

Paul E. Potter
Attorney for Defendant
**JOHN WILLIAM STINSON**

DATED: September 29, 2006

Respectfully submitted,

Terrence J. Bennett
Attorney for Defendant
**JOHN WILLIAM STINSON**

DATED: September 29, 2006

Respectfully submitted,

Kenneth A. Reed
Attorney for Defendant
**JOHN WILLIAM STINSON**

DEFENDANT'S MOTION TO COMPEL FURTHER DISCOVERY

State of California

# Memorandum



Date : December 14, 1992

To : T. Jenkins, Captain
Security & Investigations Unit

From : Department of Corrections 

Subject : DEBRIEFING INTERVIEW WITH
A.B. (Aryan Brotherhood)



On November 20, 1992, this unit interviewed inmate ███████████████████████████, relevant to his request to debrief and disassociate himself from the Aryan Brotherhood (AB) prison gang. Subject is a validated member of that gang. Subject stated that his desire to disassociate himself from the Aryan Brotherhood (AB) stems from ████████████████████████

The following information is compiled from information provided by ██████████ via written paperwork and interviews conducted with him on November 20, 1992, December 1, 1992, December 3, 1992, and December 11, 1992.

According to ███████████ he became aware of the Aryan Brotherhood (AB) Prison gang in Approximately 1980 ("S" arrived at FSP on 7-10-80), while at ████████████ In Approximately 1981 Subject was introduced to the following AB members while assigned to

SNYDER, Junior                              "JR"
NORRIS, Wendall             "Blue"
SCHMIDT, Bobby                              "American Bob"
MAC DONALD, James                          "Jimmy Mac"

████████████████████████████████████████

████████████████████████████████████ WOODS;

1

120170



DEBRIEF REPORT

Page Four

CONFIDENTIAL

During this time "S" was introduced to the following AB members:

TROXELL, Danny
CARMICHAEL, Michael
FORBES, Mervin
FORTMAN, Phillip
SMYTH, Kirk
OROURKE, Joseph
JONES, Larry
CLEMENCE, Richard
BURNETT, Edward
GRIFFIN, Robert



indicated beside himself the following AB were receiving narcotics at FSP through the visiting room and transporting it inside there rectums into the institution:

SAKAKIAN
TROXELL
NORRIS
SNYDER
STANTON

The AB business consisted of selling drugs at $50.00 per paper (referring to paper packages of heroin). They would give the buyer three weeks to pay them for the drugs. The money was sent to various addresses within the community.

The AB dealt in heroin, crank, marijuana, and cocaine.



explained that GRIFFIN had assigned him to work with knowing they did not like each other.

"S" started recruiting "Shooters" (someone willing to follow orders and carry out assaults against the AB enemies).

indicated he transported knives and drugs for the AB throughout FSP by taping them to his leg or inside his

4



DEBRIEF REPORT
Page Five

CONFIDENTIAL



clothing.    The drugs he carried in his mouth, so if he was caught by staff he could swallow it to get rid of it.



"S" indicated LOWERY did not know who was making the bomb.  "S" further stated that he ▮▮▮▮▮ MONACO, GRIFFIN and BURNETT knew that THURS was preparing the bomb.



120172

DEBRIEF REPORT
Page Six

CONFIDENTIAL



While at the California Correctional Institution at Tehachapi (CCI), (he was transferred to CCI on 1-9-87), "S" related he was told by SCHRECKENGOST, James,             , AKA "Shorty", an AB member, that there was a split in the AB between those at CCI and FSP.   SCHRECKENGOST had indicated that NORRIS, GRIFFIN, and STINSON, John, (C-40154), AKA "John", an AB member had to work things out              believes that GRIFFIN and STINSON are the leaders of the AB and everyone else are just soldiers.              was told by some of the AB members that NORRIS was no longer considered a leader of the AB and would be stabbed if anyone could get to him.



6

120173



DEBRIEF REPORT
Page Seven

CONFIDENTIAL



"S" was told about the stabbing of BARNETT, Jeffery, C-25327, AKA "Monster", which was done by MIEARS, Daryl, C-26578, AKA "Bunny" on (6-17-83).  MIEARS had told "S" of the attack which had been ordered by SNYDER.



7

120174



DEBRIEF REPORT
Page Eight

CONFIDENTIAL





"S" indicated he heard that TERFLINGER, Richard, (B-18173), AKA
"Ricky T", an AB member, had ordered JOHNSON, Donald,
███████), AKA "DJ", an AB associate, to stab the two Correctional
Officers at CCI ████████████████████████████████████████████
This was because of JOHNSON being involved in a fist fight with
REDENBAUGH, James, (C-13051), AKA "Redman", an AB member, which
resulted in REDENBAUGH being shot during the incident (4-17-
87).

██████ indicated that ██████ and ██████ both had requested to
lock up, because of being in unspecified trouble with AB
affiliates.  "S" indicated all new members had given there word
that they would not use narcotics, both ██████ and ██████ had
been using.  ██████ stated that the order that no AB would use
narcotics except for MOORE, (Robert, ██████████), AKA "Bobby", an
AB member, and some of the older AB who were already using, had
come from GRIFFIN.



██████ indicated the allies of the AB are the Mexican Mafia
(EME) prison gang.

8

120175





DEBRIEF REPORT
Page Nine

CONFIDENTIAL

The enemies according to "S" are the BGF, Crips, Bloods, and the Nuestra Familia (NF) prison gang.

"S" indicates that the white child molesters are considered enemies of the AB, and will be stabbed when ever possible. He stated because most AB members and associates have children of there own, and refuse to be around anyone who hurts small children.



9

120176



DEBRIEF REPORT
Page Eleven

CONFIDENTIAL



_____ remembered hearing that GRIFFIN was upset with STANTON
for tattooing the letters "AB" and the shamrock on his chest.
This was because he felt that tattooing the AB symbol on your
body would just be helping staff to identify members of the
gang.   GRIFFIN did not want anyone else to tattoo themselves
with the AB symbols.



GRIFFIN, has the letters "AB" with the shamrock and the numbers
"666" tattooed on his stomach.



SOLCUM, has the shamrock tattooed on his chest.

STANTON, has the letters "AB" with the shamrock tattooed on his
chest.

SCHMIDT, Bobby, had the letters "AB" with the shamrock tattooed
on his chest.

11

120177

DEBRIEF REPORT

Page Nineteen

CONFIDENTIAL

(44)

This concludes ████████ participation in the debriefing process; and his case is being referred to the appropriate classification committee for evaluation and further action as required.


J. L. Brown
Correctional Sergeant
Assistant IGI

J. M. Briddle
Correctional Lieutenant
IGI

Noted/Approved By:

T. Jenkins
Correctional Captain
Security & Investigations

Noted/Approved By:

D. Hixon
Associate Warden
Security Housing Unit

Noted/Approved By:

T. Peetz
Chief Deputy Warden

Noted/Approved By:

C. Marshall
Warden

19

120178

State of California

# Memorandum

Date   December 14, 1992

To    T. Jenkins, Captain
      Security & Investigations Unit

From   Department of Corrections
       Pelican Bay State Prison, P.O. Box 7000, Crescent City, CA 95531-7000

Subject  DEBRIEFING INTERVIEWS WITH VANCE GLOYNE C-17642, AKA "BUTCH",
         A.B. (Aryan Brotherhood)

This report is deemed confidential in accordance with
California Code of Regulations, Title 15, Division 3,
Subchapter 4, Article 5, section 3321 (a) (1 and 2). In that
other confidential informants are named within this report for
the purpose of corroborating Subject's information, this report
is deemed confidential to him as well.

On November 20, 1992, this unit interviewed inmate GLOYNE,
Vance, C-17642, AKA "Butch", relevant to his request to debrief
and disassociate himself from the Aryan Brotherhood (AB) prison
gang. Subject is a validated member of that gang. Subject
stated that his desire to disassociate himself from the Aryan
Brotherhood (AB) stems from his fathers heart disease and
wanting to be closer to his father so that he could have a
visit with him before he dies.

The following information is compiled from information provided
by GLOYNE, via written paperwork and interviews conducted with
him on November 20, 1992, December 1, 1992, December 3, 1992,
and December 11, 1992.

According to GLOYNE, he became aware of the Aryan Brotherhood
(AB) Prison gang in Approximately 1980 ("S" arrived at FSP on
7-10-80), while at Folsom State Prison (FSP). In Approximately
1981 Subject was introduced to the following AB members while
assigned to the main kitchen at FSP:

| | | |
|---|---|---|
| SNYDER, Junior | (B-97932) | "JR" |
| NORRIS, Wendall | (C-05302) | "Blue" |
| SCHMIDT, Bobby | (B-65479) | "American Bob" |
| MAC'DONALD, James | (C-74488) | "Jimmy Mac" |

OBIS confirms the above inmates were incarcerated at FSP during
this time.

GLOYNE was, at this time, celled with MONACO, Joseph, (C-28431),
AKA "Sicilian Joe". They became good friends with HUGHES,
Patrick, (D-39980), AKA "Red Dog" who was an AB member.

076556

DEBRIEF REPORT
GLOYNE, C17642
Page Two

CONFIDENTIAL

GLOYNE and MONACO were given "cart blanch", meaning to help with all AB activities on the yard in 1983, such as:

1. Selling of narcotics
2. Having weapons manufactured
3. The collecting of debts
4. Settling of disputes

After "S" and MONACO would work out on the weight pile they would hang out by the trash cans. This is where the AB members and associates would gather. "S" indicated that after awhile the AB took an interest in him and MONACO.

One night after dinner HUGHES asked him and MONACO if they would like to become members of the AB. They informed HUGHES that they would talk about it and get back to him. After discussing it with MONACO, "S" decided he was too old to be joining any gang. He told MONACO of his decision and MONACO agreed with him.

GLOYNE indicated that MONACO was the one that informed HUGHES of their decision not to join the gang, but indicated to HUGHES that they would be there if needed. Meaning they would do anything asked of them including stabbing assaults.

No one seemed to resent the fact that they did not want to join the AB. "S" stated that he never knew of someone getting stabbed for refusing to join.

"S" indicated that the staff at Folsom State Prison believed him to be a member because of who he associated with and who he would eat dinner with.

"S" stated the following is required of any prospective gang member:

Prospective members must be sponsored by a recognized member.

Prospective members are required to participate in a probation period.

All AB members present must vote unanimously in order for the prospect to be given membership.

Prospects are required to further the gang goals by participating in criminal activity such as collecting debts,

VM-484-7

DEBREIF REPORT
GLOYNE, C17642
Page Three

CONFIDENTIAL

manufacturing and distributing weapons, receiving and distributing narcotics and performing assaults on the AB enemies.

Once membership is granted then it is a lifetime commitment and the only way out is by death.

"S" related that the AB have used the symbol or tattoo of the shamrock with or without the letters "AB" and the numbers "666" which represents the sign of the beast (Satin). They tattoo their body to denote membership in the gang.

The only rules "S" ever heard were:

1.) No drugs are to be used
2.) No disrespect to another brother

GLOYNE stated that in 1983 and 1984 he was asked by SLOUP, Ronald, (B-88304), AKA "Whitey" an AB member, to manufacture weapons for the AB. During this time all the known AB members were housed in Administrative Segregation at FSP. SLOUP and SCHMIDT, William, (C-16544), AKA "Billy" were the AB shot callers within the general population. The order for SLOUP and SCHMIDT to take charge was sent out through the visiting room from SLOCUM, Ronald, (C-30521), AKA "Slo", an AB member, who was locked in the Security Housing Unit (SHU).

"S" indicated he helped the group, by selling narcotics for "Jr" SNYDER and for himself. "S" further indicated he had a girlfriend named Leann WORKMAN who was visiting him and was bringing him heroin. "S" would receive the heroin, which he would keister (referring to placing the contraband in his rectum) and transport into the institution. The heroin was picked up by Leann from Barry WILSON'S, wife, (Unable to identify) a connection GLOYNE had made arrangements with back in 1983. "S" stated Leann had gotten arrested by the Sacramento Sheriff's Department for having in her possession of some counterfeit money and her visiting privileges were terminated, but they still corresponded with each other. GLOYNE indicated the drugs were for his use, but he did give drugs to any of the AB that wanted it. He felt this was one of the reasons he never had to pay the AB the 1/3 tax for selling drugs inside the institution.

DEBRIEF REPORT
GLOYNE, C17642
Page Four

CONFIDENTIAL

During this time "S" was introduced to the following AB members:

| | | |
|---|---|---|
| TROXELL, Danny | (B-76508) | AKA "Danny T" |
| CARMICHAEL, Michael | (B-33451) | AKA "Silent Mike" |
| FORBES, Mervin | (C-10147) | AKA "Moose" |
| FORTMAN, Phillip | (B-03557) | AKA "Phil" |
| SMYTH, Kirk | (C-33481) | AKA "Spanky" |
| OROURKE, Joseph | (B-53936) | AKA "Lil Joe" |
| JONES, Larry | (B-73778) | AKA "Turtle" |
| CLEMENCE, Richard | (B-15482) | AKA "Bear" |
| BURNETT, Edward | (B-34087) | AKA "Eddie" |
| GRIFFIN, Robert | (B-26484) | AKA "Blinky" |

GLOYNE indicated beside himself the following AB were receiving narcotics at FSP through the visiting room and transporting it inside there rectums into the institution:

SAKAKIAN
TROXELL
NORRIS
SNYDER
STANTON

The AB business consisted of selling drugs at $50.00 per paper (referring to paper packages of heroin). They would give the buyer three weeks to pay them for the drugs. The money was sent to various addresses within the community.

The AB dealt in heroin, crank, marijuana, and cocaine.

"S" became a Tier Tender and worked in 5 building, Old Folsom. The AB in charge of this building was LOWERY, Mitchell, C-23856, AKA "Hoss".

GLOYNE explained that GRIFFIN had assigned him to work with LOWERY knowing they did not like each other.

"S" started recruiting "Shooters" (someone willing to follow orders and carry out assaults against the AB enemies). He did this for LOWERY at his request whenever an assault needed to be carried out. "S" stated he would not always be told of the motive for the assaults that were to take place.

GLOYNE indicated he transported knives and drugs for the AB throughout FSP by taping them to his leg or inside his

KM-486-4

076559

DEBRIEF REPORT
GLOYNE, C17642
Page Five

CONFIDENTIAL

clothing.  The drugs he carried in his mouth, so if he was
caught by staff he could swallow it to get rid of it.

In approximately 1984, "S" was instructed by TROXELL to stab a
Black Guerrilla Family (BGF) prison gang member named JOHNSON
(ID unknown) who was in the Security Housing Unit (SHU) he was
to stab him while he was being escorted to the visiting room.
JOHNSON was in SHU for stabbing inmate MANNING (ID unknown),
JOHNSON never came through going to the visiting room, so the
assault never took place.

"S" indicated that it had been reported that ordered an assault
on an inmate named Steve (Unable to identify) stabbed, GLOYNE
stated "this was done because Steve was in debt to the AB over
drugs he owed BURNETT.  The assault took place in the shower in
5 Building during a lockdown sometime in 1984.  "S" indicated
he did not stab Steve and did not known who did.

One night LOWERY came to GLOYNE'S cell with a cigar tube
containing C-4 plastic explosives.  He was asked by LOWERY to
hold the C-4 for a few weeks.  GLOYNE'S cell partner, MONACO,
was working in the license plate factory and was asked by
THURS, Joe, C-09617, an AB associate, to help prepare a bomb
which was to be detonated in that area.  They wanted this bomb
to cause major damage and injuries.  The motive for this
incident was a protest due to Administration at FSP not
releasing AB members from Segregation fast enough.

"S" indicated LOWERY did not know who was making the bomb.  "S"
further stated that he (GLOYNE) MONACO, GRIFFIN and BURNETT
knew that THURS was preparing the bomb.

GLOYNE thinks the reason the bombing incident failed was
because THURS was receiving drugs into the institution and was
not giving the 1/3 cut that was required by the AB.  LOWERY not
knowing of the plans using THURS to make the bomb had a
"shooter" (ID unknown) stab THURS.  "S" stated that when THURS
found out about LOWERY being involved in the bombing plans, he
gave this information to FSP Administration.  Due to this
incident all AB members and associates were locked up
(September 1985).

GLOYNE was locked up until July 1986 and then released to the
general population, where he stayed until November 1986.  At
that time he was locked up for his affiliation with the AB.

DEBRIEF REPORT
GLOYNE, C17642
Page Seven

CONFIDENTIAL

in 5 Building.  This was done."S" thinks because BILICIC had
beat his child in the visiting room, and some of the AB had
seen this and didn't like it, so he was killed.  "S" didn't
known who ordered the assault.

"S" had been told by LOWERY that he had killed a biker named
FREE, (Daniel, C-39601), AKA "Gypsy" (Occurred at FSP on 5-12-
83 IR# 83/IR/128).  This was because of disrespecting the AB.

"S" was told about the stabbing of BARNETT, Jeffery, C-25327,
AKA "Monster", which was done by MIEARS, Daryl, C-26578, AKA
"Bunny" on (6-17-83).  MIEARS had told "S" of the attack which
had been ordered by SNYDER.

"S"  admitted  transporting  the  weapons  which  had  been
manufactured in the hobby shop by BENNET, Freddie, (B-66360),
AKA "Freddie", an AB associate, which were given by him to
SHIELDS, Robert, (B-99475), AKA "Bobby Ray", an AB associate
and CHRISTENSEN, Duane,       (C-02429), AKA "Danny", an AB
associate, who had used the weapons to stab to death HODGES,
John, (C-30427), an AB associate in his cell in 5 Building (2-
27-84).   GLOYNE had recruited SHIELDS, and JONES, Terry, (C-
27797), an AB associate, for the assault, "S" indicated that
HUGHES took over the recruiting for the assault and SHIELDS and
CHRISTENSEN had been picked.  GLOYNE had heard that a famous
attorney from Texas, named "Racehorse" HAINES, (Harold), had
been hired to represent them, and because of him they were able
to beat the murder case against them in court.

He had heard that WHITE, Skip, C-54746, AKA "Big Skip", an AB
member, who had been using alot of narcotics and had gotten
paranoid and had hung himself while in SHU (on 1-25-85).

GLOYNE indicated that LOWERY had instructed him, to stab
(BRINKLEY, Gary, C-91007), AKA "Zebo", during the evening meal,
but later, LOWERY told him not to follow through with the
assault.  LOWERY instead ordered (WRIGHT, Eugene, D-35474), AKA
"Geno", an AB associate and LAMBERT, Joseph, (C-04346), AKA
"Jody", an AB associate to make the assault.  This was in 5
Building on (5-23-85).  This assault was due to ZEBO asking
questions about the homicide of FREE.  ZEBO and FREE had been
good friends.

"S" had heard that KEITH, (Michael, C-78345), AKA "Ugle Mike",
was stabbed to death by RICHARDSON, (Wayne, D-11329), AKA
"Smiley, an AB associate on (10-16-85, Log # FSP, 85/IR/630).

KM-486-1

076562

DEBRIEF REPORT
GLOYNE, C-17642
Page Eight

CONFIDENTIAL

This was ordered by LOWERY because KEITH had owed money to the AB for some heroin he had received.

GLOYNE had heard that GASKILL, (Gordon, C-19495), AKA "Gordy", was stabbed to death on (8-29-86, at FSP, Log # 86/IR/5]), for not providing the 1/3 tax to deal in narcotics on the line at FSP. "S" did not remember who had carried out the assault, but indicated the order for the assault came from SAKAKIAN.

"S" indicated he heard that TERFLINGER, Richard, (B-18173), AKA "Ricky T", an AB member, had ordered JOHNSON, Donald, (B-95524), AKA "DJ", an AB associate, to stab the two Correctional Officers at CCI (Officers M. Stanton and G. Banks on 6-8-87). This was because of JOHNSON being involved in a fist fight with REDENBAUGH, James, (C-13051), AKA "Redman", an AB member, which resulted in REDENBAUGH being shot during the incident (4-17-87).

GLOYNE indicated that LOWERY and MIEARS both had requested to lock up, because of being in unspecified trouble with AB affiliates. "S" indicated all new members had given there word that they would not use narcotics, both LOWERY and MIEARS had been using. GLOYNE stated that the order that no AB would use narcotics except for MOORE, (Robert, A-78843), AKA "Bobby", an AB member, and some of the older AB who were already using, had come from GRIFFIN.

GLOYNE indicated that PARROTT, William, B-72730, AKA "Billy", an AB member, had told him (GLOYNE) to leave the dinning room area because something was getting ready to happen. GLOYNE had heard afterwards that MILES, Richard, B-90357, AKA "Ricky", an AB associate, had been apprehended with a gun which he (GLOYNE) believed had been smuggled into the prison, it was to be used to shoot PINELL, Hugo, (A-88401), AKA "Yogi" a BGF member. Subject assumed that the order to shot PINELL was ordered by NORRIS, because NORRIS and MILES were real good friends. (This was on 12-24-81). GLOYNE indicated he never saw the gun.

"S" indicated that SMYTH had been apprehended with a commercially manufactured Buck knife while at FSP, (5-26-82) this had been transported in his (SMYTH'S) rectum from the California Institution for Men at Chino (CIM).

GLOYNE indicated the allies of the AB are the Mexican Mafia (EME) prison gang.

DEBRIEF REPORT
GLOYNE, C17642
Page Nine

CONFIDENTIAL

The enemies according to "S" are the BGF, Crips, Bloods, and the Nuestra Familia (NF) prison gang.

"S" indicates that the white child molesters are considered enemies of the AB, and will be stabbed when ever possible. He stated because most AB members and associates have children of there own, and refuse to be around anyone who hurts small children.

Subject was asked about the 11-25-9?, CDC 115, for possession of a stinger. "S" stated this was for making hot water for coffee.

"S" indicated the about the 3-30-91, CDC 115, for possession of dangerous contraband, with the rolled magazines and lengths of cloth were for working out by attaching them to his mattress, he would weight lift with them.

He was asked about the 6-23-87, CDC 115, for possession/control of dangerous contraband, (2 razors). He stated the floor officer had forgot to pick them up, so he kept them. During a cell search he said they were discovered.

Subject was in agreement with the 1-9-87, CDC 115, at CCI for possession of narcotics paraphernalia, he stated he had transported the syringe with needle from FSP to CCI in his rectum for his own use when he arrived there.

He was asked about the incident on 9-8-87, attempting to introduce narcotics into the institution at CCI through the mail. He stated that his crime partner RAMOS, Johnny, had sent some heroin into him, behind the postage stamp, but staff discovered the heroin and he was charged with possession. He stated he was aware that the narcotics would be coming in through the mail. He stated the return name and address was for a Kim RAMIREZ, this was just a name they had made up and there was no address listed.

GLOYNE indicated the 6-23-86, CDC 115, for refusing to move out of the shower area, was because while he was soaping himself up in the shower someone tried to stab someone else on the yard (Unable to identify). He knew he would have to return to his cell with the soap on his body, so he told the officer he was going to rinse the soap off first, the officer fired a warning shot near him which got him out.

DEBRIEF REPORT
GLOYNE, C17642
Page Ten

CONFIDENTIAL

"S" was asked about the 11-29-85, CDC 115, for possession of a
hypodermic needle. He stated this was for his own use.

GLOYNE agreed with the 9-25-84, Confidential Memo, which was in
reference to his name on the rocking horse which was sent to
FORBES. He stated that when he and MONACO had gone over to the
trash can area they were both asked if they wanted to sign the
rocking horse, he stated they were the last ones to sign it.
"S" indicated when asked to sign, it would have been
disrespectful to have refused to sign the horse.

He was asked about the 8-15-81, CDC 115, for fist fighting. He
stated he was fighting with FLORES, (B-98141), and MONACO was
trying to break up the fight. He stated it was because they
had been drinking alcohol and had gotten into an argument and
then the fight.

"S" indicated the 11-27-82, CDC 115, for intoxication and his
involvement in a fight, was because he had been drinking with
SCHMIDT and SLOUP. SLOUP and a PENA, (C-21303) started
fighting "S" tried to break up the fight and as staff responded
they apprehended him for fighting.

He was asked about the 10-10-80, Incident Report for possession
of a knife which was made from sheetrock. He stated that the
knife had to be in the cell when he was placed in there,
because he didn't know the knife was hidden inside the pillow,
which was discovered during the cell search.

GLOYNE indicated the 11-20-80, Crime Report from Sacramento
County for possession of a section of hack saw blade. He
didn't know anything about this report. This unit could not
find a CDC 115 or Incident Report in his C-File pertaining to
this hack saw blade possession.

"S" was asked about the 2-21-90, CDC 115, for corresponding
with a former inmate. He indicated he had corresponded with
MONACO, but since the CDC 115, he has stopped writing to him.
MONACO still writes and sends him money. He states MONACO is
off of parole and has not been in any trouble that "S" knows
of.

GLOYNE agreed with the 3-25-88, 128 A, for dangerous property,
which was a razor and some books of matches, he said this was
for his own use.

DEBRIEF REPORT
GLOYNE, C17642
Page Six

CONFIDENTIAL

While at the California Correctional Institution at Tehachapi
(CCI), (he was transferred to CCI on 1-9-87), "S" related he
was told by SCHRECKENGOST, James, B-56432, AKA "Shorty", an AB
member, that there was a split in the AB between those at CCI
and FSP.  SCHRECKENGOST had indicated that NORRIS, GRIFFIN, and
STINSON, John, (C-40154), AKA "John", an AB member had to work
things out.  GLOYNE believes that GRIFFIN and STINSON are the
leaders of the AB and everyone else are just soldiers.  GLOYNE
was told by some of the AB members that NORRIS was no longer
considered a leader of the AB and would be stabbed if anyone
could get to him.

The only "hook-ups", (refers to mail drops on the streets), he
used were through PAPPAN, Ruben, E-27251, AKA "Butch", an AB
member had given him while they were in the Law library in
early 1992:

        John CONLEY
        P.O. Box 815
        Rio Linda, CA 95673

This address was to be used to send three party mail,
(referring to an inmate sending a letter to the community, and
that person sending the letter back into the institution to
another inmate).  GLOYNE states he never used this address.

GLOYNE was writing BROWN, Paul, C-87961, AKA "Big D", an AB
associate through BROWN'S girlfriend:

        Wendy (BROWN)
        P.O. Box 902025
        Palmdale, CA 93539

This address was also used as a three party mail drop.

GLOYNE indicated he never witnessed any assaults, but had
reported, he had heard while around the AB members and
associates, about the following AB related assaults and deaths:

"S" had heard that CLEMENCE was killed because he dropped out
of the AB.  He had heard that HUGHES, FORBES and JONES were
responsible for the homicide (FSP 1-25-82).

"S" was also told about the killing of BILICIC, (Anthony,
C-40373) on (12-29-82, at FSP IRM 82/IR/3B0) by ROBERTS, Floyd,
C-27999, AKA "Floyd", an AB associate, the assault took place

6

KW-486-6

DEBRIEF REPORT
GLOYNE, C17642
Page Eleven

CONFIDENTIAL

He was asked about the 8-1-84 Confidential Memo, cell search of MONACO and his cell, which revealed a list of names, of AB members and associates. He stated that the list was being kept by MONACO, but he and MONACO had been keeping "care packages", for the individuals listed so that if anyone was to get locked up they would be able to send the them "care package" to them. The packages consisted of cigarettes, coffee, and toilet articles. "S" indicated his name was also on this list.

GLOYNE remembered hearing that GRIFFIN was upset with STANTON for tattooing the letters "AB" and the shamrock on his chest. This was because he felt that tattooing the AB symbol on your body would just be helping staff to identify members of the gang. GRIFFIN did not want anyone else to tattoo themselves with the AB symbols.

"S" identified the following AB with tattoos representing the gang.

NORRIS, has the letters "AB" with the shamrock and the numbers "666" tattooed on his chest.

GRIFFIN, has the letters "AB" with the shamrock and the numbers "666" tattooed on his stomach.

FORTMAN, has the shamrock tattooed on his stomach, "S" believes DEMARCO, Alan, B-95874, AKA "Al", an AB associate had put the tattoo on FORTMAN.

SNYDER, has the shamrock tattooed on his chest.

SAKAKIAN, has the shamrock tattooed on his chest.

CRAIN, has a small shamrock tattooed in the middle of a tattoo of Ireland on his chest.

FORBES, has the letters "AB" with the shamrock tattooed on his chest.

SOLCUM, has the shamrock tattooed on his chest.

STANTON, has the letters "AB" with the shamrock tattooed on his chest.

SCHMIDT, Bobby, had the letters "AB" with the shamrock tattooed on his chest.

DEBRIEF REPORT
GLOYNE, C17642
Page Twelve

## CONFIDENTIAL

Subject is willing to submit to a polygraph examination to prove the veracity of his statements.

Subject is willing to testify in court regarding the information that subject provided in this report.

Subject related that his participation in the debriefing does have an impact on him and his family.

Subject identified the following by name and/or alias, hometown, and gang status:

| Name | CDC # | AKA | Affiliation |
|------|-------|-----|-------------|
| ALVAREZ, Raymond | C-99227 | Bevito | EME member |
| ASHKER, Todd | C-58191 | Todd | AB associate |
| BAKKEN, Christopher | B-86157 | Chris | AB associate |
| BARNETT, Jeffery | C-25327 | Monster | Assaulted |
| BENNET, Freddie | B-66360 | Freddie | AB associate |
| BERMUDEZ, Fernando | B-53002 | Fernie | EME member |
| BILICIC, Anthony | C-40373 | Unknown | Deceased |
| BIZIEFF, David | C-16229 | Dash | AB associate |
| BIZIEFF, Nick | B-83378 | Nick | AB associate |
| BRETCHES, Dale | C-10395 | Dale | AB member |
| BRINKLEY, Gary | C-91007 | Zebo | Assaulted |
| BROWN, Paul | C-87961 | Big D | AB associate |
| BURNETT, Edward | B-34087 | Eddie | AB member |
| CALLOWAY, Joe | B-95067 | Big Joe | BGF member |
| CARMICHAEL, Michael | B-33451 | Silent Mike | AB drop out |
| CASTELLANOS, Arthur | C-17275 | Tablas | EME member |
| CASTREJON, Darryl | B-99412 | Darryl | EME member |
| CHANCE, David | B-40557 | Unknown | AB member |
| CHERRY, Ronald | C-45024 | Ron | AB associate |
| CHRISTENSEN, Duane | C-02429 | Danny | AB associate |
| CLEMENCE, Richard | B-15482 | Bear | AB deceased |
| CRAIN, Robert | C-32455 | New York | AB member |
| DEMARCO, Alan | B-95847 | Al | AB associate |
| DIAZ, Salvador | B-96771 | Topito | EME member |
| DONAHUE, Patrick | B-65485 | Pat | AB dropout |
| DURAN, Bernardo | B-29279 | Barney | EME member |
| ESTACIO, Howard | C-17589 | Wolf | AB member |
| ESTRADA, Alfredo | B-97888 | Vago | EME member |
| FORBES, Mervin | C-10147 | Moose | AB member |
| FORGIONE, Frank | B-88176 | Frank | AB member |
| FORTMAN, Phillip | B-03557 | Phil | AB member |
| FREE, Daniel | C-39601 | Gypsy | Deceased |
| GALLEGOS, David | B-39506 | David | EME member |

12

KM-486-12

DEBRIEF REPORT
GLOYNE, C17642
Page Thirteen

CONFIDENTIAL

| | | | |
|---|---|---|---|
| GARCIA, Paul | B-38366 | Memo | EME member |
| GIBBS, Charles | D-54501 | Charlie Tuna | AB associate |
| GLASS, Mark | C-38781 | Buzzard | AB member |
| GONZALES, Johnny | B-79330 | Johnny | AB associate |
| GONZALES, Raymond | C-92251 | Ray | EME member |
| GONZALES, Rudy | C-01111 | Trampa | EME member |
| GONZALEZ, John | A-76277 | Green Eyes | EME member |
| GRAJEDA, Daniel | C-39195 | Quate | EME member |
| GRAJEDA, Thomas | C-90753 | Wino | EME member |
| GRIFFIN, Robert | B-26484 | Blinky | AB member |
| HERNANDEZ, Ruben | C-04672 | Tupi | EME member |
| HODGES, John | C-30427 | John | AB deceased |
| HOOD, Lyle | C-10256 | Lyle | AB associate |
| HUGHES, Patrick | D-39980 | Red Dog | AB drop out |
| JOHNSON, | Unknown | Unknown | BGF member |
| JOHNSON, Donald | B-95524 | DJ | AB associate |
| JONES, Larry | B-73778 | Turtle | AB drop out |
| JONES, Terry | C-27797 | Unknown | AB associate |
| KINDER, Junior | C-23244 | Lefty | BGF member |
| LAMBERT, Joseph | C-04346 | Jody | AB associate |
| LANDERS, Kenneth | C-17171 | Kenco | AB associate |
| LOPEZ, Barney | C-49828 | Popeye | EME member |
| LOPEZ, Emiliano | E-06271 | Tonito | EME member |
| LOWERY, Mitchell | C-23856 | Hoss | AB drop out |
| LUNA, Manuel | C-09235 | Rocky | EME member |
| MACDONALD, James | C-24488 | Jimmy Mac | AB drop out |
| MANNING | Unknown | Unknown | Unknown |
| McELHINEY, Michael | B-94093 | Big Mac | AB member |
| MEIEL, Mart | D-21089 | Wolf | AB associate |
| MIEARS, Daryl | C-26578 | Bunny | AB associate |
| MILES, Richard | B-90357 | Ricky | AB associate |
| MONACO, Joseph | C-28431 | Sicilian Joe | AB Associate |
| MORGAN, Joseph | C-43997 | Joe | EME member |
| MURPHY, Dennis | C-10199 | Irish | Deceased |
| NORRIS, Wendall | C-05302 | Blue | AB member |
| NUNEZ, Peter | B-81041 | Angus Pete | EME member |
| OLIVERAS, Steve | C-48911 | Steve | AB associate |
| OROURKE, Joseph | B-53936 | Lil Joe | AB member |
| PAPPAN, Ruben | E-27251 | Butch | AB associate |
| PARROTT, William | B-72730 | Billy | AB member |
| PENDLETON, James | C-26497 | JP | AB member |
| PEREZ, David | B-06676 | David | EME member |
| PIFER, James | B-86791 | Unknown | AB member |
| PINA, Daniel | C-15021 | Danny Boy | EME member |
| PINELL, Hugo | A-88401 | Yogi | BGF member |
| RAMOS, Johnnie | Unknown | Unknown | Crime partner |
| REDENBAUGH, James | C-13051 | Redman | AB member |

KM-486-13

13

DEBRIEF REPORT
GLOYNE, C17642
Page Fourteen

## CONFIDENTIAL

| | | | |
|---|---|---|---|
| ROBERTS, Floyd | C-27999 | Floyd | AB associate |
| RODRIGUEZ, Cesar | C-51442 | Cesar | EME member |
| RODRIGUEZ, Ralph | A-75690 | Vito | EME member |
| ROYBAL, Ernest | C-20753 | Kilroy | EME member |
| RUFFO, Arthur | C-23189 | Art | AB member |
| SACATO, Vevesi | C-12024 | Vessie | EME member |
| SAKAKIAN, David | B-80727 | David | AB member |
| SALAS, John | C-35552 | Smokey | EME member |
| SALAS, Roberto | C-46192 | Robot | EME member |
| SALINAS, Alfred | C-71460 | Tigre | EME member |
| SANTISTEVAN, G. | C-49753 | Gilbert | EME member |
| SCHMIDT, Bobby | B-65479 | American Bob | AB deceased |
| SCHMIDT, William | C-16544 | Billy | AB associate |
| SHEPHERD, Michael | C-25456 | Tank | AB associate |
| SHIELDS, Robert | B-99475 | Bobby Ray | AB associate |
| SHINE, Gavin | C-36642 | Irish | AB member |
| SHYROCK, Raymond | H-28713 | Huero | EME member |
| SLOUP, Ronald | B-88304 | Whitey | AB drop out |
| SMYTH, Kirk | C-33481 | Spanky | AB member |
| SNYDER, Junior | B-97932 | Jr. | AB drop out |
| SOLCUM, Ronald | C-30521 | Slo | AB member |
| SOTO, Jimmy | A-37735 | Rube | EME member |
| SPINNER, Joseph | C-22118 | Joe | AB dropout |
| STANTON, Marvin | C-18702 | Chunky | AB member |
| STINSON, John | C-40154 | John | AB member |
| TERFLINGER, Richard | B-18173 | Ricky T | AB member |
| THURS, Joe | C-09617 | Unknown | Unknown |
| TORRES, Manuel | C-07627 | Tati | EME member |
| TROXELL, Danny | B-46578 | Danny T | AB member |
| TUCKER, Wesley | C-12406 | Wesley | AB associate |
| VALENCIA, Angel | C-02624 | Angel | EME member |
| WEBB, Thomas | C-00128 | Tommy | AB associate |
| WHITE, Skip | C-54746 | Big Skip | AB deceased |
| WILSON, Barry | Unknown | Unknown | Associate |
| WRIGHT, Eugene | D-15474 | Geno | AB associate |
| | | Boss Shorty | BGF member |
| | | Chavo | EME member |
| | | Chino | EME member |
| | | FreedomFighter | BGF member |
| | | G2 | BGF member |
| | | Lucky | BGF member |
| | | Sleepy | EME member |
| | | Speedy | EME member |

DEBRIEF REPORT
GLOYNE, C17642
Page Fifteen

CONFIDENTIAL

An investigation was conducted by this unit into the
information that Subject provided. The following reports
corroborate his information.

CDC 115 dated 11-25-91, (PBSP) Possession of syringe.

CDC 115 dated 03-30-91, (PBSP) Possession of dangerous
contraband. (Rolled magazine 11 inches in length and one and
one half inches in diameter bound with strips of cloth, a
braided cloth rope approximately 26 inches in length, two
lengths of braided cloth each 16 inches in length.)

CDC 115 dated 06-23-87 (CCI) Possession/control of dangerous
contraband. (2 disposable razors)

Incident Report, Log #. SMSC-87-349, dated 09-08-87 (CCI).
Attempting to introduce narcotics into the institution through
the mail. (Behind the stamp was a lump of heroin) The return
address on the envelope was from Kim Ramirez, Wilimington
California.

CDC 115 dated 01-09-87, (CCI) Possession of narcotics
raphernalia. ("S" had a foreign object in his rectum, one
podermic syringe with needle.

CDC 115 dated 06-23-86, (FSP) Refusing a direct order. ("S" was
ordered to move out of the shower area where a knife was
laying).

CDC 115 dated 11-29-85, (FSP) Possession of a hypodermic
needle.

CDC 115 dated 08-15-81, (FSP) Fist fight with other inmates.
("S" was involved in a fist fight with Inmate MONACO, C-28431
and FLORES, B-98141)

CDC 115 dated 11-27-82, (FSP) Intoxicated. "S" and SCHMIDT,
C-16544 were both intoxicated.

CDC 115 dated 11-27-82, (FSP) Information received that "S",
SCHMIDT, C-16544 and SLOUP, B-88304 were involved in a fight
with PENA, C-27303.

CDC 115 dated 06-13-81, (FSP) Stimulants and Sedatives. "S"
admitted drinking alcohol.

DEBRIEF REPORT
GLOYNE, C17642
Page Sixteen

CONFIDENTIAL

Incident Report Log # 80/IR/130, dated 10-10-80, (FSP) Knife discovered during cell search of "S" cell. (Made from sheetrock).

District Attorney Crime Report #A80-1609, dated 11-20-80, Sac County. Possession of weapon. ("S" was in possession of a section of hack saw blade).

CDC 128A dated 02-21-90, Corresponding with former inmate.

CDC 128A dated 03-26-88, (CCI) Dangerous Property. (State razor and several books of matches).

Confidential Memo dated 08-01-84, (FSP), Cell search of MONACO, C-28431 and "S" revealed a list of AB members and Associates.

Confidential Memo, 9-25-84, (FSP), In reference to a rocking horse which had been made in the hobby shop to send to FORBES, C-10147, new baby son. The rocking horse was autographed by AB members and associates, GLOYNE'S name appeared on the horse.

Confidential Memo, 3-3-86, (FSP), Debrief of Mitchell LOWERY, C-23856. Which confirms the homicide of FREE, C-39601 by him; and the bombing attempt of the industries area; and other AB activities.

Confidential Memo, 11-21-85, (FSP), Debrief of Daryl MIEARS C25678. Confirms stabbing assault of BARNETT C-25327; and the bombing attempt involving MONACO, C-28431, THURS, C-09617 and "S".

Confidential Memo, 12-22-87, (FSP), Interview with Jonathan LOWERY, C-51611. Confirms the homicide of FREE, C-39601 by LOWERY, C-23856; the assault of BARNETT, C-25327 by MIEARS, B-92664; and GLOYNE'S account of AB activities.

Confidential Memo, 6-3-88, (FSP), Debrief of Michael CLARK, C-90391. Which corroborates that LOWERY, C-23856 and MIEARS, C-26578 had requested protective custody; the homicide of KEITH, C-78345 by RICHARDSON, D-11329; and the homicide of GASKILL, C-19495.

Confidential Memo, 5-2-88, (FSP), Debrief of Scott ESACIO, C-09196. Which corroborates the homicide of KEITH, C-78345 by RICHARDSON, D-11329; the homicide of HODGES, C-30427 by SHIELDS, B-99475 and CHRISTENSEN, C-02429.

DEBRIEF REPORT
GLOYNE - C17642
Page Seventeen

CONFIDENTIAL

Confidential Memo, 4-20-88, (FSP), Debrief of Alex OBIDINSKI,
C-55186? Confirms the homicide of KEITH, C-78345 by
RICHARDSON, D-11329.

Confidential Memo, 5-13-88, (CCI), Debrief of Duane WYNN,
C-14049. Confirms subjects account that GRIFFIN did not want
to allow the AB to use narcotics.

Confidential Memo, 5-25-88, (FSP), Interview of inmate RIDDLE,
C-27577. Confirms subjects account of AB criminal activity at
FSP

Confidential Memo, 7-26-88, (CCI), Debrief of Robert JOHNSON,
B-95695. Confirms AB activity in the kitchen and dinning room
area; the homicide of FREE, C-39601 by LOWERY, C-23856; and the
identification of gang members.

Confidential Memo, 8-10-88, (FSP), Debrief of Calvin NICHOLS,
B-89114. Confirms the narcotics being smuggled back from the
visiting room into the institution by the AB; the gun incident
by MILES, B-0357 to shot PINELL, A-88401; the homicide of
HODGES, C-30427 by SHIELDS, B-99475 and CHRISTENSEN, C-02429;
the homicide of CLEMENCE, B-15482 by HUGHES, C-11654 and JONES,
B-73778; and the identification of gang members.

Confidential Memo, 10-7-88, (FSP), Debrief of Wayne RICHARDSON,
D-11329. Which confirms the homicide of KEITH, C-78345 by him;
and the identification of gang members.

Confidential Memo, 8-5-89, (CCI), Debrief of Bill FRISBEE,
C-24966. Confirms the identification of gang members.

Confidential Memo, 8-25-89, (FSP), Debrief of Robert PERRONE,
C-27248. Which confirms MONACO's, C-23431 role in the plot to
blow up the industries area.

Confidential Memo, 4-10-85, (SQ), Debrief of Gary LaFEVER,
C-13447. Confirms the homicide of BILICIC, C-40373 by ROBERTS,
C-27999; the homicide of HODGES, C-30427 by SHIELDS, B-99475
and CHRISTENSEN, C-02429; the homicide of FREE, C-39601 by
LOWERY, C-23856; the homicide of CLEMENCE, B-15482 by HUGHES,
C-11654 and JONES, B-73778; the stabbing assault of BARNETT,
C-25327 by MIEARS, B-92664; and the identification of gang
members. Confidential Memo, 9-18-87, (SQ),    Debrief of Tony
OGLE,       C-11131. Which confirms the homicide of CLEMENCE,
B-15484 by JONES,    B-73778.

LM-486-17

CONFIDENTIAL

DEBRIEF REPORT
GLOYNE, C17642
Page Eighteen

Confidential Memo, 2-7-91, (CCI), Debrief of Junior SNYDER, B-97932. Confirms the homicide of CLEMENCE, B-15484 by HUGHES, D-39980 and JONES, B-73778; the assault on staff at CCI by JOHNSON, B-95524 because REDENBAUGH, C-13051 was shot during a fist fight with JOHNSON on 4-17-87.

Confidential Memo, 9-11-91, (PBSP), Debrief of Lyle HOOD, C-10256. Which confirms the gun incident by MILES, B-90357 to shoot PINELL, A-88401; the plot to blow up the industries area; the homicide of CLEMENCE, B-15482 by HUGHES, D-39980 and JONES, B-73778; the homicide of FREE, C-39601 by LOWERY, C-23856; the homicide of HODGES, C-30427 by SHIELDS, B-99475 and CHRISTENSEN, C-02429; the assault on staff at CCI by JOHNSON, B-95524 because REDENBAUGH, C-13051 had been shot during a fist fight with JOHNSON on 4-17-87; the homicide of BILICIC, C-40373 by ROBERTS, C-27999, the hanging suicide of WHITE, C-54746.

Confidential Memo, 11-27-91, (PBSP), Debrief of Jesse BRUN, C-14986. Confirms the homicide of FREE, C-39601 by LOWERY, C-23856; the homicide of BILICIC, C-40373 by ROBERTS, C-27999; the homicide of HODGES, C-30427 by SHIELDS, B-99475 and CHRISTENSEN, C-02429; the assault on staff at CCI by JOHNSON, B-95524 because of REDENBAUGH, C-13051 was shot during the fight.

Confidential Memo, 6-11-92, (PBSP), Debrief of Karl CARTER, B-98855. Confirms the homicide of FREE, C-39601 by LOWERY, C-23856; the homicide of HODGES, C-30427 by SHIELDS, B-99475 and CHRISTENSEN, C-02429 and the information about the attorney "Racehorse" HAINES; the homicide of KEITH, C-78345 by RICHARDSON, D-11329; the homicide of GASKILL, C-19495 and the reason behind the killing.

Confidential Memo, 4-26-84, (FSP), Debrief of Frank WIRSHUP, C-07374. Which confirms the homicide of CLEMENCE, B-15482 by HUGHES, C-11654 and JONES, B-73778.

The information that GLOYNE provided is consistent with the information contained in his C-File report on his conduct and activity relevant to the JAB. There is no other information known to this unit to indicate that his participation was more involved that what is documented within this report.

The information that subject has provided is considered reliable, based upon California Code of Regulations, Title 15, Division 3, Subchapter 4, Article 5, Section 3321 (c) (2,3,4).

CONFIDENTIAL

18

KM-486-18

DEBRIEF REPORT
GLOYNE, C17642
Page Nineteen

CONFIDENTIAL

This concludes Glonye's participation in the debriefing process; and his case is being referred to the appropriate classification committee for evaluation and further action as required.


J. L. Brown
Correctional Sergeant
Assistant IGI

J. M. Briddle
Correctional Lieutenant
IGI

Noted/Approved By:

T. Jenkins
Correctional Captain
Security & Investigations

Noted/Approved By:

J. Hixon
Associate Warden
Security Housing Unit

Noted/Approved By:

T. Pent
Chief Deputy Warden

Noted/Approved By:

C. Marshall
Warden

Date    January 13, 1993

To      T. Jenkins, Correctional Captain
        Security & Investigations Unit

From  : Department of Corrections
        Pelican Bay State Prison, P.O. Box 7000, Crescent City, CA  95531-7000

Subject :
        DEBRIEFING INTERVIEW WITH                       AKA "BLUE", AB



CONFIDENTIAL

DEBRIEF OF ████████████
January 13, 1993
Page 3



████ reported that he was transferred to CCI in 1971 to participate in the "Addict Program". He said that "Blinky" Robert GRIFFIN (B26484) informed him that he had joined the AB; and then requested from MAHER and John ABLE ████████ if he could "raise his hand" (sponsor)████ into the gang. ████ said that MAHER and ABLE gave him their approval; and GRIFFIN tattooed "AB" onto ████████ arm. ████ said that this group was known as the "Arien Brotherhood"; and that he was told a few months later by older AB members that the "Arien Brotherhood" was a mock Aryan Brotherhood gang; and that neither ABLE nor CAVANAUGH were recognized members of the true AB. He reported that CAVANAUGH, ABLE, Dale POTTER (unable to ID), Ira STUART ████████, and other "Arien Brotherhood" members were not considered to be in "good standing" with the true AB. ████ said that he responded to this information by removing the tattoo, rubbing it off with salt.



120117

DEBRIEF OF ████████████
January 13, 1993
Page 4



- An inmate (TAYLOR ████████ had been killed by GRIFFIN and "Niko" VELASQUEZ ████████ (This occurred 6-28-72 at SCC).

120118

DEBRIEF OF ███████
January 13, 1993
Page 5



█ TERFLINGER stabbed "Red Dog" (Michael FAY ██████ at San Quentin behind drugs. (FAY was assaulted on 11-5-72)

██████ related information regarding the following incidents and AB activity from 1973 to 1975:

DEBRIEF OF ▮▮▮▮▮
January 13, 1993
Page 6

(41)



- GRIFFIN made "Butch" John CALFY ▮▮▮▮▮ a member of the AB. He said that when CALFY was no longer considered to be in good standing with the gang, then GRIFFIN felt compelled to carry out the assault against him. "S" said that Danny CAVANAUGH and Fred MENDRIN held up a sheet, while GRIFFIN and KRUGER stabbed CALFY, including the thrust of a pencil into CALFY's eye. NORRIS reported that the assault occurred at San Quentin. (GRIFFIN and KRUGER pushed a pencil into CALFY's eye, stabbed him and garroted him on 12-26-74).

- "Razor Ray" (Raymond FRY ▮▮▮▮▮ The word was sent by "Snuffy" SMITH at the request of Frank TUBACH ▮▮▮▮▮. FRY was TUBACH's crime partner in the robbery of a liquor store. "S" said that this assault occurred in the mid-70s; and the victim was garroted with a wire and stabbed about 25 times while he was seated on the toilet. "S" said that GRIFFIN and KRUGER left FRY seated on the toilet; and crossed the victim's legs and put a hat on his head before exiting the scene. (FRY was killed by unknown assailants at SQ on 8-12-74).

DEBRIEF OF
January 13, 1993
Page 7

(41)



related that the following incidents and AB activity from 1976 until his parole in 1977:



– "Duke" Mark DUCLUSS _____ was assaulted by Rick TERFLINGER (B18173). _____ explained that this was a fist fight which was set up by "Harpo" Ron HARPER; because DUCLUSS associated with "Snake" TITMAN _____ _____ added that TERFLINGER was shot in the leg during the altercation. (This fight occurred on 1-06-76).



120121

CONFIDE...

DEBRIEF OF ████████████
January 13, 1993
Page 8

(41)



- "Wardell" (WILLIAMS ████████ stabbed TERFLINGER at SQ (7-11-77).

- "S" reported that many of the members of the AB became disenchanted with the gang during this period of time; and sought to separate themselves from it. NORRIS said that he was in a gang leadership position; and allowed for many of them to leave without retaliatory consequences.

DEBRIEF OF ███████████
January 13, 1993
Page 9

 identified the following as members whom he allowed to leave:

| | |
|---|---|
| RAWLINSON, ███ | "Danny Dog" |
| HARRIS, ███ | "Joe" |
| FORBES, Melvin | "Moose" |
| CRAIG, James | "Spider" |
| QUINN, Sam | "Sam" |
| LAMB, Tommy | "Tommy" |

██████ stated that he discharged from prison in August 12, 1977. He said that he was increasingly unsatisfied with what the AB and its members were becoming. He said that he was disgusted with the way that AB members were killing each other. He said that he advised ███████ that he was through with the AB;

██████ related that the following events occurred during his parole/discharge:



120123

DEBRIEF OF ████████████████
January 13, 1993
Page 11

"S" related that "Red" SUTTON ███████████ was killed at San Quentin by "Harpo" HARPER and "Jerry" HENDERSHOT due to a drug dispute. (SUTTON was killed on 12-28-78).

NORRIS reported that the wife of "New York" Bobby CRANE ████████████, "Flower" Shirelle HENDRICKS (███████████) killed MAHONE by shooting him in her Los Angeles (Redondo Beach) apartment. He added that John STINSON (C40154) directed Steve BARNES ██████████ to dispose of the body. "S" said that she had been the wife of ████████████, then the girlfriend of MAHONE, and finally the wife of CRANE. ██████████
████████████████████████████ it was Frank ROOPOLI ██████████ who assisted STINSON in disposing of MAHONE's body. NORRIS is erred in his identification of BARNES. MAHONE was killed on 12-30-78.)



Subject reported that the AB went through a restructuring phase in 1978; and that the leadership of the gang was assumed by "Blinky" GRIFFIN. He reported that during the restructuring, most of the veteran and founding AB members did not rejoin. He said that Bobby MOORE and T.D. BINGHAM rejoined the new phase.

"S" related that a rivalry developed between the Satans Few gang and the Aryan Brotherhood at San Quentin. He reported two circumstances that led to his rivalry: (1) Satans Few members assaulted Eddie BURNETT's girlfriend, and pinched the nipples of her breasts with pliers; and (2) "Harpo" Ronnie HARPER cheated some Satans Few members for some drugs that he received from them through the fence. ██████ said that this led to a major disturbance between the two groups, in which two Satans

120124

DEBRIEF OF ▓▓▓▓▓▓▓
January 13, 1993
Page 12

(41)

Few members (Ronald HENDERSON and James MAURUS) were killed "S" identified Steve BARNES and "Baby Dave" ELLIOTT as AB members who contributed to the victims's demise. (HENDERSON and MAURUS were killed by AB members Sidney QUESENBERRY, Steve RUOPOLI, Donald PARRISH, Steve BARNES, and David ELLIOTT at San Quentin on 2-22-79).



DEBRIEF OF
January 13, 1993
Page 13



S said that █████████ had been promiscuous with several AB members. He added that GRIFFIN, SLOCUM, CRANE, and STINSON discussed killing █████████ because of that and other reasons.

According to "S", he returned to prison in 1979; and he was suspected by staff of being an AB Dropout. For several months, he was kept apart from the AB. He reported that he became aware that "Blinky" GRIFFIN initiated an order to kill him "on sight" and he wanted to confront the AB about the reasons for the order.

Subject stated that "Smitty" Clifford SMITH B84870 and "Big Mike" THOMPSON B68010 attempted to sneak up on him from behind to assault him; but he alerted his attention to them and they backed away.

120126

DEBRIEF OF ▓▓▓▓▓
January 13, 1993
Page 15

▓▓▓▓▓▓ stated that subsequent to the peace arrangements between him and MORGAN, AB member named "T-Bone" GIBSON arrived from San Quentin, still retaining the attitude of continuing the rivalry between the AB and EME. ▓▓▓▓▓ said that GIBSON disrespected an EME member on the tier at CIM; and so GRIFFIN targeted him for assault. "T Bone" GIBSON (B68023) was killed by "Blinky" GRIFFIN and "Junior" SNYDER. ▓▓▓▓▓▓ said that GRIFFIN cut GIBSON's throat. He added that following the murder, SNYDER, Eddie BURNETT, and Clifford SMITH contacted GIBSON's sister to console her, falsely promising to take revenge against GIBSON's assailants; and accepted money and drugs from her as a reward to locate the killers. ▓▓▓▓▓▓



"S" stated that he carried the gun with him to L. A. County Jail when he went out to court as a witness for John STINSON; but he did not use the gun, and returned to Folsom with it. According to ▓▓▓▓▓ he used it later when he attempted an escape from the custody of Solano County Sheriff Department during an out to court transport for a child custody hearing; but the attempt failed when the deputies exited the transportation van while it was in motion; and the vehicle wrecked with ▓▓▓▓▓ inside.

120127



DEBRIEF OF ▬▬▬▬▬
January 13, 1993
Page 16



▬▬▬▬ related that several AB members began acting "crazy"
during their long periods of confinement; and this led to them
becoming victims of the AB. ▬▬▬▬ identified PAPPAN as an
example; and said that he was subsequently stabbed at CIM by
Clifford SMITH and Mike THOMPSON. (PAPPAN was stabbed 34 times
at Palm Hall by SMITH and THOMPSON on 1-21-81).



120128



DEBRIEF OF ▓▓▓▓▓▓▓▓
January 13, 1993
Page 17



▓▓▓▓▓▓▓ stated that in approximately 1982, "Blinky" GRIFFIN sent
a message to O'ROURKE via GRIFFIN's girlfriend, Tammy (Tammy
SHINN, ▓▓▓▓▓▓▓▓▓▓▓▓▓, to rob a Bingo parlor where there was a
large amount of money. "S" said that the robbery was not
accomplished; and GRIFFIN then sent O'ROURKE various messages,
directing him to kill the following:

        WATERS, Joseph
        LAMB, Tommy
        PAPPAN, Ruben
        RUOPOLI, Steve

120129



DEBRIEF OF ████████████
January 13, 1993
Page 18

████████ indicated that O'ROURKE responded with a plea which said "Can't we save the bacon of Tommy Lamb?" "S" said that LAMB was targeted for refusing to kill ex-AB member, Steve BARNES; and had reported that he believed Steve BARNES and "Baby Dave" ELLIOTT were obligated to dropout and inform. He said that Steve RUOPOLI was targeted for refusing to kill his brother, Frank RUOPOLI, ex-AB member. ████████ said that O'ROURKE was compelled by GRIFFIN and CRANE to carry out the assaults against the above in order to rectify the loss of the money and narcotics to ████████. "S" added that the murders were not carried out, the Bingo Parlor was not robbed, and O'ROURKE is still indebted to CRANE.



████████ said that a vote was taken to decide the leadership. He said that they appointed a commission, comprised of ████████, GRIFFIN, and BINGHAM. He said that because BINGHAM was being transferred to the Federal penal system, the members selected CRANE to be the third commission member, instead. ████████ reported that a 9 member Council was formed to rule underneath the Commission; and was comprised of the following:

    THOMPSON, Michael
    SMITH, Clifford
    SLOCUM, Ronnie
    CURL, Robert
    CARMICHAEL, Michael
    STINSON, John
    TERFLINGER, Richard
    O'ROURKE, Joseph
    CLARK, Steven

Subject added that Bobby MOORE, Eddie BURNETT, and "Junior" SNYDER were added later to the Council. "S" related that this structure was short-lived; because the majority of the Council members either dropped out or were killed within 6 months after the structure's formation/appointment.



DEBRIEF OF ▓▓▓▓▓
January 13, 1993
Page 19

▓▓▓▓▓ related that GRIFFIN's leadership changed the Aryan
Brotherhood and what it represented. He said that this also led
to a separation between him and GRIFFIN on views and ideas. He
explained that GRIFFIN believes in "Blood In/Blood Out" and
"making bones" (drawing the blood of an enemy to prove
worthiness of membership). He said that he and GRIFFIN also
disagreed on the use of drugs - GRIFFIN discourages use of
narcotics, with the exception of marijuana; but ▓▓▓▓▓ accepts
the use of drugs. He indicated that he and GRIFFIN are also
divided over racism; and identifies GRIFFIN and his affiliates
as white supremists/racists.



▓▓▓▓▓ related that the first victim under the new structure
and rules was AB Council member, "Loser" Steven CLARK (B61299).
"S" stated that CLARK was speaking badly against too many other
AB affiliates; but he added that CLARK would also get alot of
drugs, but wouldn't share them. ▓▓▓▓▓ said that as an example
to members who continued to use drugs, GRIFFIN ordered the
killing of CLARK. ▓▓▓▓▓ said that he, and even CLARK himself,
manufactured the weapon that was used for the homicide. "S"
said that CLARK provided the weapon to BURNETT, who gave it to
Clifford SMITH. He said that the directions were carried out by
SMITH and Mike THOMPSON just 3 days prior to CLARK's parole.
▓▓▓▓▓ said that GRIFFIN and STINSON subsequently reported the
murder back to CRANE at SQ, via another inmate (MASTERSON
▓▓▓▓▓ (CLARK was killed at CIM on 7-03-82).

120131



DEBRIEF OF ▮▮▮▮▮▮
January 13, 1993
Page 20

▮▮▮▮▮ reported that the following incidents relevant to AB activity occurred from August, 1982 to 1985:



- Floyd ROBERTS from Bakersfield killed an inmate (Anthony BILICIC ▮▮▮▮▮▮) in 5 Building. ▮▮▮▮▮▮ said that this resulted in ROBERTS being made a member by GRIFFIN. (BILICIC was killed on 12-28-82).





DEBRIEF OF █████████
January 13, 1993
Page 21

- "S" related that GRIFFIN discussed killing the family of Steve BARNES; because BARNES testified in court against GRIFFIN. "S" said that among those targeted were BARNES's father Richard BARNES, Steve BARNES's girlfriend, and the girlfriend's baby. "S" said that the baby was half-Arabic; and this was viewed with racist judgment as being wrong. "S" said Michael THOMPSON, Clifford SMITH, "Blinky" GRIFFIN, STINSON, and CRANE were discussing this near him, while he was playing dominos with MCCART and "Superman". ████████ reported that he was against the killing of BARNES's family and the baby; and said that he had the opinion that killing the baby would be viewed as morally unacceptable. "S" said that BARNES's father was killed by Curtis PRICE ██████████. "S" said that he was told about the murder by "Frisco Bob" CURL; who heard it from STINSON after the murder was carried out. "S" said that "Blinky" GRIFFIN told Clifford SMITH that PRICE was the assailant; and added that GRIFFIN was upset that ███████ was made aware of the murder and wanted to find out who told him. He added that he was not aware of the deed until after it occurred. (Richard BARNES was killed on 2-13-83).



Relevant to "Rhino" Richard ANDREASON ██████████████

He related that ANDREASON assisted the ABs by sending drugs in to them while he was out of prison; but fell in disfavor with the gang when he told authorities information about a robbery/homicide committed by 3 Hispanics. "S" said that Ricky ROSE ██████████ a close associate of John STINSON and BURNETT, was directed by STINSON to stab ANDREASON due to his perceived informant status. (ROSE stabbed ANDREASON in Orange County Jail on 5-25-83).

DEBRIEF OF ████████████
January 13, 1993
Page 22

(4)

████ related that ANDREASON was subsequently killed while he was incarcerated in the Federal Penal System. "S" said that his own family suspected that he was involved in the directing of ANDREASON's murder; and he received a letter from his ████████ ████ questioning his participation in it when he would not take action against BOTELHO over threatening her with the knife. "S" said that he informed them that he was not responsible for the order; but that he was killed for informing on other individuals. (ANDREASON was killed at Leavenworth Federal Penitentiary on 10-6-83).

"S" said that "Monster" (Jeffrey Lee BARNETT ████████ ████████████) had attempted to please all of the AB affiliates he encountered by sending in expensive cigars and meats; and conversing about subjects that he knew were interests of the individual. "S" said that BARNETT's wife ended up becoming romantically involved with "Red Dog" HUGHES ████████████. "S" related that BARNETT became targeted for assault when information was received indicating some type of unacceptable behavior while BARNETT was incarcerated at C.R.C. ████ stated that an associate of STINSON, "Fontana Kid" (Guthrie DANOWSKI ████████, was assigned to perform the assault; but he was discovered by staff with the weapon; and was unable to carry out the assault. "S" said that BARNETT did get assaulted at a later date. He added that BARNETT's ex-wife was in the company of the wives of SLOCUM and SNYDER when she dealt with some Black inmates in Sacramento. This was also considered inappropriate. (BARNETT was stabbed at Folsom on 6-17-83).



- "S" said he witnessed EME affiliates "Danny Boy" PINA ████ "Lil Man" ORTIZ ████████ and Gilbert SANTISTEVAN ████ kill another inmate (Arnulfo ESTRADA ████████) on the 4A yard. He added that the weapon was manufactured by AB affiliate, "Doc" INMAN (B71163). (ESTRADA was killed on 1-10-84).



DEBRIEF OF ███████████
January 13, 1993
Page 26



████████ related that Nevada prison gang Aryan Warrior member,
"Dusty" BURKETT ██████████ received about 50 dilaudid a week
through visiting from his mother and wife. "S" said that
BURKETT's father was dying of cancer, and the dilaudid was part
of his prescription. ████████ related that BURKETT occasionally
gave him 4 or 5 dilaudid occasionally; but that he considered
this as an insignificant gesture on BURKETT's part.

"S" said that Robert NELSON was directed to stab Benny Wardell
WILLIAMS due to WILLIAMS's assault on TERFLINGER in 1977.
██████████ said that this led to a conflict between the BGF
("Twister" BONVILLE and Paul REDD) and the AB; but that
BURNETT, STANTON, and SMYTH informed BONVILLE that they would
take action against the person responsible to clear up the
situation.  "S" said that "Wizard" (Patrick SHEGAS
██████████ at the direction of STANTON and BURNETT, killed
the clerk, Walter BLACK ██████████)." "S" related that "Blinky"
GRIFFIN sent a message to him ██████████ via David SAHAKIAN
explaining that if the Blacks are still upset with the stabbing
of WILLIAMS, then allow for NELSON to be stabbed. ████████ said
that SAHAKIAN also reported that he had a personal conflict
with NELSON; and directed one of the ESTACIO brothers to do the
assault. WILLIAMS was stabbed on 10-31-85; BLACK was killed on
12-11-86; and NELSON was stabbed [by Howard ESTACIO, Scott
ESTACIO, Jesse BRUN, and David REED] on 2-1-86). (The
information regarding BLACK does not corroborate with the time,
period or circumstances. ████████ related that BLACK was killed
by SHEGAS before NELSON got stabbed in order to clear up the
rivalry. However, BLACK was killed 10 months after NELSON was
assaulted. The circumstances regarding the stabbing of WILLIAMS,
and the stabbing of NELSON have been corroborated by other
sources/reports).



DEBRIEF OF
January 13, 1993
Page 27

████ reported that he assisted an AB associate, David FERGUSON ████████ by "squashing" his drug debt to the EME and Black inmates. "S" said that the EME owed the AB for $1700 worth of "crank" (methamphetamine) "fronted" by Eddie BURNETT to Gilbert SANTISTEVAN. "S" said that FERGUSON subsequently informed staff that Aryan Warrior member, "Dusty" BURKETT was in possession of a zipgun and bullets. "S" said that prison administrative staff interviewed BURKETT; and BURKETT made a deal that if he relinquished the gun and bullets, then he would receive a family visit in return. "S" said that BURKETT told staff that he had to speak with ████ first; and BURKETT went to his (████████) cell and informed him regarding the deal that he had made with administrators, and asked ████ if he would intercede if the deal was not honored by staff. "S" said that he noticed that staff were observing their conversation. He said that BURKETT then removed the gun and bullets from underneath a board; and delivered them to staff. ████ said that the deal was not honored; and BURKETT was returned to the custody of Nevada Department of Corrections.



120136

CONFIDENTIAL

DEBRIEF OF
January 13, 1993
Page 29





Subject related that GRIFFIN's faction were involved in disruptive behavior at San Quentin; such as racially-motivated assaults, flooding the tiers, and "gassing" staff (throwing liquid or debris on staff). "S" related that the following are examples of individuals who participated in this type of behavior/activity: "Blinky" GRIFFIN, Fred MENDRIN, Rick TERFLINGER, Ron KRUEGER, "Harpo" HARPER, "Buzzard" HARRIS.



- "Irish" Dennis MURPHY _____ was killed by Todd ASHKER. According to _____ inmate MURPHY was an AB member who spent most of his sentence at San Quentin; and "Blinky" GRIFFIN, and TERFLINGER wanted MURPHY killed. "S" identified GRIFFIN, CRANE, and TERFLINGER as the individuals who ordered MURPHY's murder. "S" denies reports in his C-File which indicate that he was involved in MURPHY's murder. He added that he did not sponsor -

120137

CONFIDENTIAL



DEBRIEF OF ▓▓▓▓▓▓
January 13, 1993
Page 30

ASHKER into the AB. He indicated that he provided weapon stock to MURPHY prior to the assault; and knew previous to the murder that MURPHY was targeted for assault. ▓▓▓▓▓ reported that at the time of the murder, MURPHY and ASHKER were in C Section; SHINE, him, SARTOR, SMYTH, and FORTMAN were in B section; and PERRONE, H. ESTACIO, RUFFO, and ROWLAND were in A section. (MURPHY was killed at New Folsom on 5-25-87).

▓▓▓▓ stated that Art RUFFO was involved in an incident with some Blood street gang members at New Folsom in 1987, which resulted in him being shot by Correctional staff. (RUFFO was shot on 6-23-87). "S" said that RUFFO and other AB members conspired to retaliate against the Bloods on Halloween, 1987; and that the Crips agreed to "back off" (not participate).

"S" said that Gaven SHINE ▓▓▓▓▓ had arrived from San Quentin with a mission from GRIFFIN to kill ▓▓▓▓ FORTMAN, MOORE, "Spanky" SMYTH, and Jesse BRUN. ▓▓▓▓▓ said that he confronted SHINE; and hit him in the chest with a weapon in his hand (not stabbing him) so as to warn him. "S" related that "Mike" CLARK provided a weapon to SHINE to use against BRUN. "S" also stated that SHINE falsely reported to TANNER, STINSON, and CRANE that he "ran" ▓▓▓▓▓ to "PC" (Protective Custody) after staff administratively removed him from the yard.



120138



DEBRIEF OF ███████████
January 13, 1993
Page 31

"S" said that Hells Angels leader, "Irish" (Michael O'FARRELL ████████ had disrespected AB affiliate, "Lil Tank" Michael SHEPHERD ████████ and his wife. NORRIS related that John STINSON gave SHEPHERD the approval to carry out the assassination. ████████ said that he is unable to explain more details regarding the incident; and does not know the reasons that no retaliatory attack was carried out by the Hells Angels. (O'FARRELL was killed by SHEPHERD and Aaron MARSH ██████████ on 6-6-89).

"Cornfed" SCHNEIDER and Jesse BRUN garroted "Riverside" PERRONE in the transportation van. (This occurred on 8-16-89).



"S" said that "Wally" LEWIS ████████ and Tony OGLE ████████ were made AB members by GRIFFIN. "S" also said that GRIFFIN recruited "Animal" NEWTON ████████████ and "Bob" PAXTON or PATTON; ██████████████

120139



DEBRIEF OF ████████
January 13, 1993
Page 32



According to ████████, he wrote to "Cornfed" SCHNEIDER's attorney (unidentified), utilizing the "hit and miss" (urine) method on the back of a Forkbeard poem.



120140

CONFIDENTIAL



DEBRIEF OF ████████████
January 13, 1993
Page 33

According to ████████ the symbols of the AB are the shamrock; and the letter "AB". "S" said that he has not written a shamrock or AB symbol since 1989.



120141

DEBRIEF OF ████████████
January 13, 1993
Page 35



████████ said that "Blinky" GRIFFIN also attempted to do the same by having Jesse BRUN pretend protective custody needs, so as to gain access to assault AB dropout, ████████████ "S" said that the plan did not work as planned. ████████ also admitted that he attempted to do the same thing by directing REDENBAUGH to claim protective custody, so as to assault ████████████



"S" said that "Blinky" GRIFFIN and his followers were responsible for "taxing" all white inmates for 1/3 of their drugs, money, and canteen. "S" said that he modified this by directing all white inmates dealing drugs to provide 1/4 of their profits to AB affiliates and other white inmates who were locked up in segregation units.

DEBRIEF OF
January 13, 1993
Page 36



said that "Blinky" GRIFFIN directed the setting up of a bomb at the Industries area at Folsom. He added that on the same day, two inmates were stabbed.



According to "S", inmates O'ROURKE, TERFLINGER, CRANE, and STINSON gained a large amount of money through their various illegal activities: drugs, gambling, and "taxing" (extortion). "S" related that PENDLETON provided gambling profits to RUFFO and CONLEY. He said that RUFFO made $2000 in L.A. County Jail on marijuana sales, accomplished through his investigator assisting him in the trafficking.



DEBRIEF OF
January 13, 1993
Page 71

Conf Memo



Conf Memo 03-22-88 RE: ███████ reports that NORRIS in-
structed ██████ to kill "Dusty" BURKETT if he got
transferred to the Nevada D.O.C. NEVADA D.O.C.

CONFIDENTIAL

DEBRIEF OF
January 13, 1993
Page 77





- "Monster" BARNETT was stabbed on the orders of NORRIS

120145

DEBRIEF OF ███████
January 13, 1993
Page 79



████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

Subject has advised this unit that he has previously been
promised inducements or favors from Departmental staff for
participation in the debriefing process. Lieutenant Briddle
personally advised subject that he would receive no promises,
inducements, or favors for his participation in the debriefing
process.

This concludes Subject's participation in the debriefing
process with this unit; and all investigative resources
available to this unit have been exhausted. He is therefore
being referred to the appropriate classification committee for
evaluation and further action as required. Future
classification committees are advised that inmate ███████ does
have legitimate/documented Safety Concerns from the Aryan
Brotherhood prison gang affiliates.

The debriefing interviews conducted with ████████ were tape-
recorded. A review of this report was conducted with ████████ on
videotape on 1-13-93.

D. T. Hawkes
Correctional Sergeant
Assistant Gang Investigator

J. Williams
Correctional Lieutenant
Institutional Gang Inv.

J. M. Briddle
Correctional Lieutenant
Institutional Gang Investigator

T. Jenkins
Correctional Captain
Security & Investigations

120146

DEBRIEF OF ████████
January 13, 1993
Page 80



Reviewed/Approved By:

J. C. Hixon
Associate Warden
Security Housing Unit


Reviewed/Approved By:

T. Peetz
Chief Deputy Warden


Reviewed/Approved By:

C. Marshall
Warden



J. Cox, Captain (A)
Debriefing of Inmate
Page 3 of 15

CONFIDENTIAL

Through August of 2000 to June of 2001, **Harper** has told me the following on numerous occasions.

The reason **AAron Marsh** was killed, because Aaron was arrogant and thought being AB made him equal to all other AB.  Before Aaron became AB, he allowed someone on the mainline at Pelican Bay State Prison to sock him in the mouth, and did not retaliate.  I was also told this by **Bobby Ray Shields.**

Confidential

118214

J. Cox, Captain (A)
Debriefing of Inmate ▉▉▉▉▉▉▉▉
Page 9 of 15




| Name | aka | Membership Status | Comments |
|---|---|---|---|
| Peterson | Hillbilly | Member AB | Now in the Federal Bureau of Prisons. Was in contact with John Stinson and Ricky Terflinger and other members of the Aryan Brotherhood. Peterson was also the go between for the institutions. |
| | Tank | Member AB | Missing in Action last I heard |
| Hayes, Joseph | Joey | Member AB | |
| Clement, Frank | | Member AB | Was denied membership for a while for over kill |
| Gillett, Frank | | Member AB | |
| Glass, Mark | Buzzard | Member AB | Runs Corcoran |
| | Billy Ray | Member AB | On Death Row |
| | Baby Kurt | Member AB | On Death Row |
| Phillips, Coby | | Associate AB* | From Co Co County. Sponsored by Billy Ray and Kurt. Just waiting for confirmation |
| Schneider, Paul | Cornfed | Member AB | From ▉▉▉▉▉ |
| Bretches, Dale | | Member AB | |
| | Rascal | Member AB | Helped Steveo Kill "Spun". Provided the sedative and wine. |
| Littrell, Gary | | Member AB | Killed Aaron Marsh. |
| Bartosh, Danny | | Member AB | ▉▉▉▉▉▉ |
| Rainey, Ricky | | Member AB | From Orange County. Just confirmed as a member |
| Madsen, Richard | Capone | Associate AB* | From San Diego. Sponsored by David Chance, awaiting confirmation as a member |
| Stinson, John | | Member AB | Commissioner for the Aryan Brotherhood |
| Terflinger, Ricky | Turtle | Member AB | Commissioner for the Aryan Brotherhood. Controls the money for the Aryan Brotherhood, and has enough power to make someone AB by himself. Was made AB by Ronnie Slocum. |
| Slocum, Ronny | Slow | Member AB | From Orange. Very smart. Controls NLR and Skinheads on the Streets. |
| Griffin, Robert | Blinky | Member of the AB | Has taken a back seat to the operations |
| Fortman, Phil | | Member AB | Has taken a back seat to the operations |
| | JP | Member AB | |
| | Butch | Member AB | Has no power to act against another member because of his carelessness. Needs to have his campaigns voted on. |
| Chance, David | Country | Member AB | |
| Troxell, Danny | | Member AB | Has taken a back seat to the operations |
| Christensen, Danny | | Member AB | From Orange County |
| Shields, Robert | Bobby Ray | Member of the AB | From Bakersfield. Possibly about to be in the hat for not doing anything about Junior Snyder. |
| Mickey, James | | Member of the AB | From San Fernando Valley. On some kind of committee. Real close to Ricky Terflinger. |
| Asker, Todd | | Member AB | From Co Co County. Sergeant of arms |

On 07/09/2001, I conducted an interview with ▉▉▉▉▉▉  ask him some standard debriefing questions.

*Debriefing Questions:*




Confidential

118215



J. Cox, Captain (A)
Debriefing of Inmate ▪▪▪▪▪▪▪▪▪▪▪
Page 10 of 15

<u>Standard Debriefing Questions:</u>

A.) **Dropping out factors:**
  1.) *state your reasons on why you want to disassociate yourself from the gang?* ▪▪▪▪▪ stated, he was in fear of his life and also wanted to save his release date.
  2.) *what is your assessment of the impact of you wanting to dropout upon yourself and family members?* ▪▪▪▪▪▪▪▪ stated, mostly his own life being in danger. ▪▪▪▪▪▪▪ does not believe his family is in danger. The only address the Aryan Brotherhood (AB) my have ▪▪▪▪▪▪▪▪▪▪▪▪

B.) **Personal Involvement:**

  1.) *what was your position in the gang before you dropout?* While in Tehachapi he was in charge of calling the shots and I was about to become a member of the Aryan Brotherhood.
  2.) *who sponsored you into the gang?* Harper was going to sponsor him into the Aryan Brotherhood.
  3.) *did you have to commit any acts to earn membership?* ▪▪▪▪▪▪▪ stated Yes. Eventually I would have to commit a murder. But in the mean time, anything that came my way. Or anything that needed to be killed or stabbed was his responsibility. ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

  4.) *what kind of activities did you engage in to further the gangs objectivity's?* Orchestrating assaults on inmates that were in the hat by the Brand (AB) and some narcotic trafficking into the institution.

B.) **General Knowledge:**

  1.) *what is your general knowledge of the gang or history of the gang?* The Aryan Brotherhood has been around since the sixties and early seventies. The Aryan Brotherhood was formed as a protection group for White inmates.
  2.) *do you know the purpose of the AB?* Protection for the White inmates, financial gain, and political gain. I asked ▪▪▪▪▪▪▪ what did he mean by political gain? With all the other White gangs such as the Skinheads and the Nazi Lowriders, there has been a big effort by the Aryan Brotherhood to solidify their position politically. I asked ▪▪▪▪▪▪▪▪▪▪▪ when your referring to political gain, you mean prison politics. ▪▪▪▪▪ replied, Yes.
  3.) *have you ever heard of the gangs making false statements on members or associates, in order to get to a dropout line to assault known dropouts?* ▪▪▪▪▪▪ replied, "No".
  4.) *what about the tattoos, signs and symbols?* ▪▪▪▪▪▪ said the original tattoo the Aryan Brotherhood utilizes is the shamrock or three-leaf clover. Inside each leaf of the clover are the number 6. On the right side of the clover would be the letter "A" and on the left side the letter "B".
  5.) *do you know of any Codes used by the AB?* The only code he knew was the code Harper and him were using that is mentioned in his handwritten statement.

  6.) *what kind of weapon making techniques or material used such as bombs, zip guns, stabbing and slashing weapons etc?* For the most part metal rods or flat metal stock. If you can't get metal then melt some plastic. If the weapon that is made can go through the mattress the it should penetrate through a persons body.
  7.) *where and how do gang affiliates obtain, hide, and transport narcotics and weapons?* Through their anal cavity or keister.
  8.) *do you know any gang owned or infiltrated community businesses or organizations?* No.
  9.) *do you know of any gang assets or financial matters?* Harper holds a portion of the money belonging to the Aryan Brotherhood through bank CD's.
  10.) *who are the gangs enemies?* Any one that wants to challenge the Aryan Brotherhood. There has always been a green light on Northern Hispanics. Off and on with the Blacks.
  11.) *who are the gangs. allies?* The Nazi Lowriders, Skinheads, and the Mexican Mafia.
  12.) *do you know of any community contacts that the gang uses?* Pederson aka "Hillbilly" legal runner is the only one he knows of.
  13.) *do you know of any mail drops that the gang use?* No.



118216

 

J. Cox, Captain (A)
Debriefing of Inmate ▓▓▓▓▓
Page 11 of 15

26

14.) *do you know of any other members, associates or dropouts that have contact with other gangs?* No.

**D.) Organization and persons involved therein:**

1.) *do you know the structure of the gang?* There is a commission. There are sub-committees that deal with certain issues. I asked ▓▓▓ who is on the commission? ▓▓▓ replied, **John Stinson** and **Ricky Terflinger**. There is suppose to be three (3), but New York died. The only ones being referred to in the communication is **Stinson** and **Terflinger**.

2.) *who can direct gang activity?* Any member.

3.) *who can order a hit?* Any member.

4.) *what does it take to be come a member?* It is blood in and blood out. You have to commit a murder to become a member. You must have two (2) members speak up for you. Then you go on a two-(2) year probation period. This is when the Aryan Brotherhood does an extensive back ground check into your arrest and prison history. After two (2) year your put up an become a member. But no matter what, some where in your career as an AB you will have to commit a murder.

5.) *what is the present leadership of members and associates.* ▓▓▓ states he made mention of them in his handwritten statement.

6.) *who are the present members and associates and dropout of the gang.* As far as the dropouts, there is **Pat Donohue**, **Junior Snyder**, and **Big Butch**.

7.) *do you know anyone on prospective status?* ▓▓▓ states he knows for a fact that **Colby Phillips** and **Rick Madsen** are on prospect status and waiting to get in.

8.) *do you know of any inmates that are being used as a throw away by the Gang, and that are being considered for membership?* No.

**E.) Acts and Plans:**

1.) *do you know of any planned gang activity in prison or in the community?* As far as on the streets, **Harper** expressed that he wanted kill **Jennifer** ▓▓▓ She is a member of radio station ▓▓▓, for making derogatory comments about members **Paul Schneider**, **Dale Bretches** and the Aryan Brotherhood in general. She was talking about the dog attack in San Francisco. ▓▓▓ went on to say that **Harper** is schedule to be released onto parole soon and going to be setting up a robbery crew. Two (2) the other inmates **Harper** was interested in hooking up with is "**Sleepy**" from Bakersfield, and **Padro Madero** from Bakersfield. They are getting out around the same time. ▓▓▓ also stated that if "**Baby Kurt**" how is on death row is killed, that the Aryan Brotherhood is going to kill a Correctional Officer. ▓▓▓ said, a life for a life.

2.) *do you know about their current gang activity?* Usually focus on assaults, drugs and money.

3.) *do you know of any acts committed by gang affiliates or other persons in prison or in the community in violation of the law?* No.

4.) *do you know of any Peace Officers or Public Officials that are being used by the gang?* No.

**F.) Persons endangered:**

1.) *who is in trouble with the gang?* **Scully Bob** he is on death row.

2.) *do you know any Peace Officers of Public Officials that are in trouble with the gang?* No.

3.) *who is on the gangs hit list, ones targeted for assault, such as yourself?* Everyone that I had mentioned in written statement.





CONFIDENTIAL

118217



DEBRIEFING INTERVIEW OF INMATE ████████
July 1, 1987
Page 2

# CONFIDENTIAL

ABs at this time ████████ lso admits to passing weapons and stashing them in the weight pile on the yard for the Aryan Brotherh████████ names the following inmates as being members of the Aryan Brotherhood:



2.  Griffin, Robert          B-26484          AKA BLINKY

20. Moore, Robert

DEBRIEFING INTERVIEW OF
July 2, 1987
Page 2



CONFIDENTIAL





names the following inmates as being members of the Aryan Brotherhood:

| | | | |
|---|---|---|---|
| 1. | Harper, Ronnie | AKA | HARPO |
| 2. | Waters, Joe | AKA | BROADWAY JOE |
| 3. | Norris, Wendell | AKA | BLUE |
| 4. | Griffin, Robert | B-26484 | AKA | BLINKY |
| 5. | Moore, Robert | AKA | BOBBY |
| 6. | Jones, Larry | AKA | TURTLE |
| 7. | Redenbaugh, James | AKA | Red |



CONFIDENTIAL

120210

DEBRIEF
Page Three

CONFIDENTIAL





Regarding the organizational structure of the AB, _____ repeated that the membership is overseen by a commission and Counsel, and related their function is to authorize membership and sanction assaults and other illicit activities. _____ was unable to specifically identify members of the commission or Counsel but identified the below listed individuals as being "Shotcallers" for the AB.

| | |
|---|---|
| 1. GRIFFIN | 4. CHANCE |
| 2. BURNETT | 5. CRANE |
| 3. TERFLINGER | 6. NORRIS |

_____ related that he has only seen one AB member with a tattoo _____ denoting membership into the AB. Subject describes these tattoos as a shamrock with 666 inside the clover leaves or an AB.

_____ contends that the AB do not attempt to debrief in order to gain release from SHU to the mainline. Subject stated he does not know of any "Sleepers" who may have manipulated the debriefing process.

Guidelines of the AB reported by Subject were that each perspective member must be sponsored into the gang by a recognized member and that the membership is voted in by other members. also Subject relates that only members of the AB can "Hit" another member.

Enemies of the AB according to Subject are all Blacks and affiliates of the Nuestra Familia prison gang.

Allies identified by Subject include all white inmates and affiliates of the EME prison gang.

CONFIDENTIAL

120635

## PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA          )
                             ) ss
COUNTY OF LOS ANGELES        )

I, Paul Potter, am self-employed in the County of Los Angeles, State of California. I am over the age of eighteen and not a party to this action. My business address is 3852 East Colorado Boulevard, Pasadena, California 91107.

On June 1, 2005, I served the following document described as:

**DEFENDANT STINSON'S RENEWED MOTION TO COMPEL FURTHER DISCOVERY OF MATERIAL IN THE ACTUAL AND CONSTRUCTIVE CUSTODY, CARE AND CONTROL OF THE PROSECUTION; POINTS AND AUTHORITIES; EXHIBITS**

on all interested parties by placing a true and correct copy into the e-mail network pursuant to the stipulation of counsel, addressed as follows:

Mark Childs  Mark.Childs@usdoj.gov ; Mark Aveis – Mark.Aveis@usdoj.gov

Terrence M. Bennett benedictus@earthlink.net;

Kenneth Reed  kar_crimlaw@sbcglobal.net;

Michael M. Crain michaelmcrain@aol.com Attorney for Robert Griffin;

Joseph S. Walsh attyjoewalsh@aol.com Attorney for Robert Griffin;

John G. Cotsirilos mccabeatty@aol.com Attorney for David Chance;

Knut S. Johnson  knutsj@cortezjohnson.sdcoxmail.com Attorney for David Chance;

Stanley Perlo  sperloesq@aol.com Attorney for Richard Terflinger;

Matthew Lombard  mlombard@lombardlaw.net Attorney for Richard Terflinger;

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on September 29, 2006, at Pasadena, California.

PAUL POTTER

DEFENDANT'S MOTION TO COMPEL FURTHER DISCOVERY