```
 1  GEORGE S. CARDONA
    Acting United States Attorney
 2  THOMAS P. O'BRIEN
    Assistant United States Attorney
 3  Chief, Criminal Division
    J. MARK CHILDS (Cal. Bar No. 162684)
 4  MARK AVEIS (Cal. Bar No. 107881)
    Assistant United States Attorneys
 5  Organized Crime and Terrorism Section
    1500 United States Courthouse
 6  312 North Spring Street
    Los Angeles, California 90012
 7  Telephone: (213) 894-4477
    Facsimile: (213) 894-3713
 8  Email: Mark.Aveis@usdoj.gov
    Attorneys for Plaintiff
 9  United States of America
```



                    UNITED STATES DISTRICT COURT

                FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | No. CR 02-938(E)-RGK |
|---|---|---|
| Plaintiff, | ) | <u>GOVERNMENT'S NOTICE OF MOTION AND MOTION IN LIMINE RE WITHDRAWAL FROM CONSPIRACY AND CERTAIN AREAS OF EXPERT AND LAY TESTIMONY; MEMORANDUM OF POINTS AND AUTHORITIES</u> |
| v. | ) | |
| JOHN STINSON and ROBERT LEE GRIFFIN, | ) | |
| Defendants. | ) | [No hearing set] |

TO: ALL PARTIES OF RECORD

PLEASE TAKE NOTICE that on a date, time and place to be set by the Court, the government will move the Court for an order precluding witnesses, especially defendant Griffin's designated expert witnesses, from rendering any opinion or concluding, or otherwise testifying, that a defendant withdrew from the charged conspiracy. The government will further move the Court for an order precluding defendant Griffin's witnesses, lay or expert,

from testifying about "procedures utilized by the CDC to house current and former members of the Aryan Brotherhood and the nature of such housing, the procedures used by the CDC to determine whether a validated member of the Aryan Brotherhood is active or inactive, . . . , and the active or inactive Aryan Brotherhood membership status of individuals relevant to this case." The motion is made on the grounds that such testimony or evidence is irrelevant, constitutes an inadmissible legal conclusion, is based on inadmissible hearsay, and, in any event, is more prejudicial than probative and would result in confusion and a waste of time.

The motion will be based on this notice of motion, the attached memorandum of points and authorities, the Court file, and such other evidence or argument as the Court may consider.

Dated: 12/6/06        Respectfully submitted,

GEORGE S. CARDONA
Acting United States Attorney

THOMAS P. O'BRIEN
Assistant United States Attorney
Chief, Criminal Division

/s/
_____
J. MARK CHILDS
MARK AVEIS
Assistant United States Attorney
Attorneys for Plaintiff
UNITED STATES OF AMERICA

MEMORANDUM OF POINTS AND AUTHORITIES

I.  BACKGROUND

Defendant Griffin has given notice of his intent to introduce evidence that he withdrew from the charged RICO conspiracy prior to the commencement of the statute of limitations period and that, therefore, this action is barred as a matter of law. The government has introduced evidence showing that defendants, including defendant Griffin, conducted Aryan Brotherhood business well into the period within five years before the indictment was filed,[1] such as, for example, defendant Griffin's "check-in" postcard to AB member Ronnie Slocum in February 2002 (exhibit 26A) and co-conspirator/defendant Stinson's letter to AB associate Kenny Landers in regarding the "taxing" of drug dealers for the benefit of the AB (exhibit 28A).

Notwithstanding such evidence, defendant Griffin has contended that he withdrew from the AB conspiracy prior to the five year period preceding the July 25, 2002 indictment.[2] Especially, defendant Griffin has contended that he withdrew from the AB conspiracy in 1985. See defendant Griffin's motion to

---

[1] The relevant charge carries a five-year statute of limitations. 18 U.S.C. § 3282.

[2] Defendant Stinson has at times during trial also indicated that he withdrew from the AB conspiracy. However, defendant Stinson did not designate or disclose any expert witnesses, nor did he give notice of his intent to rely on and, therefore, to co-designate defendant Griffin's experts. Accordingly, defendant Stinson should be precluded from introducing any expert testimony at all on the subjects covered by this motion.

1  dismiss based on statute of limitations, filed on or about June
2  30, 2006.
3       In furtherance of his contention, defendant Griffin gave
4  notice that he intends to call as expert witnesses San Quentin
5  Prison Warden Robert Ayers and CDC Correction Officer Barry J.
6  O'Neill, and possibly other witnesses, to testify regarding
7  "procedures utilized by the CDC to house current and former
8  members of the Aryan Brotherhood and the nature of such housing,
9  the procedures used by the CDC to determine whether a validated
10 member of the Aryan Brotherhood is active or inactive, . . . ,
11 and the active or inactive Aryan Brotherhood membership status of
12 individuals relevant to this case."  See Exhibit A, Defendant
13 Griffin's purported expert witness disclosure.  Presumably, by
14 the foregoing, defendant Griffin intends to prove that the
15 testimony of experts regarding defendant's gang "inactivity" for
16 the purposes of determining defendant's conditions of confinement
17 is relevant to show he withdrew from the AB conspiracy.
18      The government respectfully submits that such testimony
19 would be irrelevant, would constitute an inadmissible legal
20 conclusion, and would be unexceptionable hearsay.  Accordingly,
21 the government moves the Court to exclude such testimony.
22 ///
23 ///
24 ///

28                              4     United States v. Griffin, et al., CR 02-938(E)-RGK
                                      Gov't Motion in Limine re Expert Opinion

II. NO WITNESS SHOULD BE PERMITTED TO RENDER ANY OPINION, OR OFFER A CONCLUSION, THAT DEFENDANT WITHDREW FROM THE ARYAN BROTHERHOOD RACKETEERING CONSPIRACY

A. <u>A Witness' Opinion, that CDC Concluded that Defendant(s) Were No Longer Active in the AB, is Irrelevant</u>

Whether or not a witness believes, or CDC concluded, that a defendant was no longer "active" in the AB is irrelevant. Indeed, the labels, "active" or "inactive," are misleading and inconsistent with the factual findings and legal conclusion of whether or not a defendant withdrew from the charged conspiracy. In order to avail himself of the withdrawal defense, "a defendant must demonstrate some type of affirmative action which disavows or defeats the purpose of the conspiracy, either by 'making of a clean breast to the authorities, or communication of the abandonment in a manner reasonably calculated to reach co-conspirators." <u>United States v. Dorn</u>, 561 F.2d 1252, 1256 (7th Cir. 1977), citing <u>United States v. Borelli</u>, 336 F.2d 376, 388 (2d Cir. 1964), <u>cert. denied</u>, 379 U.S. 960. Moreover, merely "dropping out" of the gang, i.e., becoming "inactive," is insufficient evidence of withdrawal from a conspiracy as a matter of law. See <u>United States v. Read</u>, 658 F.2d 1225, 1233, n. 4 (7th Cir. 1981) ("Dropping out during the limitations period does not absolve a defendant.")

Thus, a witness' or CDC's conclusions or labels about the character ("active" or "inactive") of a gang member's involvement with a gang are not relevant to the trier of fact's job to

determine whether or not a defendant withdrew from the charged conspiracy as a matter of law. Quite the contrary, CDC's determination of an inmate's gang status is relevant only to CDC's own internal determination regarding an inmate's conditions of confinement. The Court has heard substantial evidence that CDC "locked down" members of the AB in the Special Housing Unit ("SHU") at Pelican Bay State Prison because CDC had concluded that AB members, including defendants, were involved in AB activities and high-security, limited contact confinement was the only to curb gang activity. CDC's decision to "lock down" defendants had nothing to do with whether or not, and would be irrelevant to, defendants' engaging in the charged conspiracy. Similarly, it should be irrelevant that an inmate was released from the SHU because CDC concluded an inmate might not presently be "active" in the gang. Furthermore, CDC's decision regarding defendant's conditions of confinement, which involved classifying defendant as active or inactive in a gang, was not an "affirmative action" which was demonstrated by the defendant as to his intent to withdraw from gang activity. CDC's decision in and of itself is irrelevant to defendant's state of mind regarding defendant's continued involvement in the AB conspiracy.

B.  <u>A Witness' Opinion, Lay or Expert, to the Same Effect is an Inadmissible Legal Conclusion</u>

By the same token, a witness' opinion, that a defendant withdrew from, or "dropped out" of a gang, is an inadmissible legal conclusion. <u>See, e.g., United States v. Urbanik</u>, 801 F.2d

1  692, 697 (4th Cir. 1986) (withdrawal from conspiracy "clearly one
2  for the jury."); opinion testimony in the form of a legal
3  conclusion is inadmissible. See, e.g., Hygh v. Jacobs, 961 F.2d
4  359, 363 (2d Cir. 1992).

5  Allowing defendant's proffered experts, or any other
6  witness, to render an opinion that defendant was "active" or
7  "inactive" in the AB would be the functional equivalent of
8  rendering the inadmissible opinion that defendant had withdrawn
9  from the AB conspiracy. Thus, the government requests that the
10 Court preclude any witness from offering an opinion that, because
11 CDC (or the witness) had concluded a defendant was no longer
12 "active" in the AB, defendant had "withdrawn" from or was
13 otherwise no longer in the gang. Only the jury may render the
14 legal conclusion, based on proper evidence, that a defendant
15 withdrew from the charged conspiracy.

16 C.  <u>Evidence that CDC Concluded that a Defendant Withdrew from
17     or Dropped Out of the AB Conspiracy, or was "Active" or
18     "Inactive" is More Prejudicial than Probative, Would Cause
19     Confusion, and Would Be Unduly Time Consuming</u>

20 It would be more prejudicial than probative for the jury to
21 hear evidence from CDC officials that CDC had concluded that a
22 defendant withdrew from or dropped out of the AB, or even that a
23 defendant was "active" or "inactive" in the AB. It is not
24 expected that the evidence would, however, be that bold.
25 Instead, and of great concern to the government, would be the
26 introduction of evidence that CDC had concluded that a defendant

27
28                              7    United States v. Griffin, et al., CR 02-938(E)-RGK
                                     Gov't Motion in Limine re Expert Opinion

was no longer "active" in the gang or was no longer "actively participating" in the gang. Again, CDC's conclusions about such matters are relevant only to CDC's security and administrative determinations about an inmate's conditions of confinement. CDC is not concerned as to whether an inmate has criminal exposure for conspiracy, as is, of course, the heart of the present case.

Furthermore, an expert's opinion, especially an expert on penal matters (like the warden of San Quentin) would likely carry great weight with the jury. The jury will not understand the distinction between the witness' opinion as to the inmate's gang involvement and the legal question of whether or not a defendant has withdrawn from the conspiracy. Thus, the jury will be confused by such testimony and such testimony should be precluded.

Finally, testimony from witnesses and experts regarding "active" or "inactive" gang status will result in an undue waste of trial time. The jury does not need to hear evidence of how the CDC decides where and how to house inmates based on an internal or administrative evaluation of an inmate's involvement in a gang. The jury has heard a reasonably sufficient amount of evidence that CDC (and the federal prison system) classifies an inmate for confinement based on the inmate's criminal history and history of prison violence. That information provided a relevant context for proof that the AB recruited and consisted of the most violent inmates. Further evidence of the process by which inmates are classified for conditions of confinement would be

well beyond the scope of relevant evidence in this case, and would evolve into an unnecessary lecture on how prisons are run.

III. DEFENDANTS' PURPORTEDLY EXCULPATORY STATEMENTS TO CDC SHOULD BE PRECLUDED

It is expected that one or more experts will testify that defendants withdrew, dropped out of, or became inactive with the AB based on the expert's interpretation of statements by a defendant. For example, defendant Griffin submitted numerous statements to the CDC between the period of 1997 and 2002 in an effort to be released from SHU confinement. Such statements include defendant Griffin's contention that he was no longer involved in the AB.

Defendant Griffin's statements about his purported lack of AB involvement are plainly inadmissible hearsay. They are the opposite of statements against interest; they are self-serving statements of a party.

IV. CONCLUSION

Based on the foregoing, the government requests that the Court preclude reference to opinions, conclusions, or testimony that a defendant "withdrew" from the AB as more fully detailed above.

September 15, 2006

**VIA FACSIMILE TO: (213) 894-0142**
Mark Childs, Assistant United States Attorney
Mark Aveis, Assistant United States Attorney
Organized Crime and Terrorism Section
United States Attorney, Central District of California
312 N. Spring Street
Los Angeles, California 90012

  Re **U.S. V. John Stinson, et al., CR 02-938(E)-RGK**

Dear Mr. Childs and Mr. Aveis:

  Pursuant to Fed.R.Crim.Proc. Rule 16(b)(1)(C), counsel for defendant Robert Lee Griffin hereby designate Robert L. Ayers, Jr. and Barry J. O'Neill as expert witnesses in this case. The expert witnesses' qualifications concerning the subject matter of their expected testimony are detailed in the resumes attached to this letter and serve as the bases and reasons for the knowledge and opinions comprising their expected testimony.

  Each of the expert witnesses is expected to testify as to California Department of Corrections (currently known as California Department of Corrections and Rehabilitation, hence CDC) customs and practices regarding the Aryan Brotherhood. They are expected to testify as to how inmates are designated (i.e. "validated") by the CDC as members of the Aryan Brotherhood, the procedures utilized by the CDC to house current and former members of the Aryan Brotherhood and the nature of such housing, the procedures used by the CDC to determine whether a validated member of the Aryan Brotherhood is active or inactive, the nature of the CDC debriefing process, and the active or inactive Aryan Brotherhood membership status of individuals relevant to this case.

  Counsel for Mr. Griffin reserve the right to designate additional individuals as expert witnesses if they become available. At this time, Mr. Ayers and Mr. O'Neill are the only known experts which counsel for Mr. Griffin intends to call as witnesses. In the event additional expert



witnesses become known to counsel for Mr. Griffin, they will designate them in accordance with Fed.R.Crim.Proc. Rule 16(b)(1)(C) without delay.

                                                Yours truly

                                                MICHAEL M. CRAIN

## CERTIFICATE OF SERVICE

I, Tonia L. Johnson, declare:

That I am a citizen of the United States and resident or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, United States Courthouse, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That I am employed by the United States Attorney for the Central District of California who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of:

**GOVERNMENT'S NOTICE OF MOTION AND MOTION IN LIMINE RE WITHDRAWAL FROM CONSPIRACY AND CERTAIN AREAS OF EXPERT AND LAY TESTIMONY; MEMORANDUM OF POINTS AND AUTHORITIES**
service was:

[] Placed in a closed envelope, for collection and interoffice delivery addressed as follows:

[] Placed in a sealed envelope for collection and mailing via United States Mail, addressed as follows:

[] By hand delivery addressed as follows:

[x] By electronic mail as follows: **See Attached List**

[ ] By messenger as follows:

[ ] By federal express as follows:

This Certificate is executed on **December 06, 2006**, at Los Angeles, California.

I certify under penalty of perjury that the foregoing is true and correct.

TONIA L. JOHNSON

U.S. v. ROBERT LEE GRIFFIN, ET AL.,
CR NO. 02-938-RGK

Joseph F. Walsh, Esq. (ROBERT GRIFFIN)
316 West Second Street, Suite 1200
Los Angeles, CA 90012
Email: Attyjoewalsh@aol.com
t-213-627-1793
f-213-789-4700

Michael M. Crain, Esq. (ROBERT GRIFFIN)
P.O. Box 3730
Santa Monica, CA 90408
Email: Michaelmcrain@aol.com
t-310-571-3324
f-310-626-9983

Knut Johnson, Esq. (DAVID CHANCE)
1010 Second Avenue, Suite 1850
San Diego, CA 92101
Email: knut@knutjohnson.com
t-619-232-7080
c-619-602-0277
f-619-232-7324

John Cotsirilos, Esq. (DAVID CHANCE)
2442 Fourth Avenue
San Diego, CA 92101
Email: Mccabeatty@aol.com
t-619-232-6022
c-619-316-9188
f-619-232-6052

Paul Potter, Esq. (JOHN STINSON)
Potter, Cohen & Samulon
3852 East Colorado Blvd.
Pasadena, CA 91107
Email: pepsquire@earthlink.net
t-626-795-0681

Terrence Bennett, Esq. (JOHN STINSON)
P.O. Box 709                **Regular Mail**
Pasadena, CA 91102-0709
Email: benedictus@earthlink.net
t-626-798-6675

Kenneth Alan Reed (JOHN STINSON)
404 West Fourth St., Suite C
Santa Ana, CA 92701
KAR_crimlaw@bcglobal.net
t-825-953-7400
f-714-953-7414
c-714-423-9947